Murphy, J.
Petitioners, Joe Patterson and Woodward, Inc., appeal as of right the trial court's order terminating their personal protection order (PPO) against respondent, Michael Lee Beverwyk, following an evidentiary hearing on respondent's motion to terminate the PPO. The PPO had been issued following an ex parte hearing under MCL 600.2950a, which, upon petition by "an individual," authorizes entry of a PPO to restrain or enjoin another individual from engaging in conduct prohibited in the Michigan Penal Code under MCL 750.411h (stalking), MCL 750.411i (aggravated stalking), or MCL 750.411s (online stalking) (collectively, the stalking statutes).
*906 [1] These three criminal statutes all refer to conduct directed at an "individual" or a "victim," statutorily defining the term "victim" as encompassing an "individual." MCL 750.411h(1)(c) through (f) ; MCL 750.411i(1)(c) through (g) ; MCL 750.411s(1), (2), (7), and (8)(k). The trial court ruled that respondent had not engaged in stalking with respect to Patterson and that Woodward, a corporation involved in aerospace and industrial markets with a facility in Zeeland, could not be a "victim" and is not an "individual" under the statutes, effectively determining that Woodward lacked standing to obtain a PPO under MCL 600.2950a. The trial court found that the PPO had been improvidently granted. On appeal, petitioners argue that MCL 600.2950a permits a corporation to seek and to obtain a PPO, that Patterson was a stalking victim, necessitating continuance of the PPO, and that, even if not a victim, Patterson could request the issuance of a PPO to protect others working in the Woodward plant. We hold that Woodward lacked standing to seek a PPO under MCL 600.2950a because the statute requires a petitioner to be a human being and does not generally allow for the filing of PPO petitions by someone other than the stalking victim himself or herself, unless the nonvictim is filing the petition in a legally recognized representative capacity. We further hold that Patterson could not seek a PPO on behalf of others at Woodward who had not themselves filed a petition for a PPO. The trial court, however, clearly erred by finding that Patterson was not a stalking victim and abused its discretion by failing to continue the PPO as to Patterson. Accordingly, we affirm in part and reverse and remand in part.
I. BACKGROUND
On April 29, 2016, petitioners filed a petition for a PPO against respondent, alleging that he was stalking petitioners, as the term "stalking" is defined in MCL 750.411h(1)(d) and MCL 750.411i(1)(e), and requesting the issuance of an ex parte PPO. An affidavit executed by Patterson was attached to the petition. He averred that he was the vice president and general manager of Woodward, and in a section of the affidavit titled "Summary of Allegations," he asserted the following:
4. [Respondent] is involved in a years-long attempt to harass and intimidate Woodward and its members [employees], apparently as revenge for his firing three (3) years ago. His behavior has recently escalated from a harassing letter-writing campaign to physically stalking our facility in a threatening manner. [Respondent] has, on at least (8) occasions this year, come to the Woodward facility on Centennial Street in Zeeland. He has parked nearby and watched the facility for some unknown purpose, or else circled the facility with his car. [Respondent's] current behavior, in light of his troubled past, is greatly concerning to us.
5. [Respondent's] stalking is either intended to harass or is being undertaken as part of a plan to do further harm to Woodward. Either he wants us to know that we are being stalked, and to be cowed and intimidated by it, or else he does not intend us to know, because he is planning to further victimize our members and he is stalking his intended victims (whoever they may be). Either way, he is a threat to the entire Woodward team.
*907 6. Of particular concern is the obsessive nature of [respondent's] conduct. He has spent the better of three years sending emails and materials to numerous Woodward members and senior leaders, most of whom played no role in his departure from Woodward. When hoped-for responses were not provided, his behavior escalated and he began stalking our facility. Even after warnings from the police, he cannot or will not stop stalking us. No reasonable person would pursue this course of conduct, which seems certain to end with [respondent] in jail.
7. There is a pall of fear and trepidation spreading over the entire facility. I am aware of multiple members inquiring whether they are still safe at work. Some have asked to be escorted to their cars at night. At least one has purchased a gun to use for protection against [respondent]. I expect such reactions so long as [respondent] continues to stalk our facility.
The affidavit proceeded to set forth averments concerning alleged acts of bullying and harassment, nonsexual in nature, committed by respondent against Woodward employees during respondent's employment with Woodward, which conduct was especially egregious in regard to one particular female co-worker, and which conduct eventually led to respondent's termination. Patterson's affidavit next contained averments providing specific details about respondent's posttermination letters, his alleged stalking activities, and the fear and anxiety suffered by employees as a result of respondent's conduct. In support, Patterson attached a letter from the aforementioned female employee detailing respondent's menacing conduct during his employment, including acts of stalking directed at her, and an intercompany e-mail indicating that respondent, while employed by Woodward, had posted news articles on a bulletin board in the facility regarding men who had been accused of murdering or abusing a girlfriend or wife. Patterson additionally attached troubling letters from respondent to Woodward's manager of human resources, who had recommended his firing;[2] an e-mail to Woodward's chairman of the board regarding respondent's termination;[3] and some "anonymous" handwritten letters denigrating the female employee whom respondent had harassed.
On April 29, 2016, the date the PPO petition was filed, the trial court entered an ex parte PPO against respondent, precluding him from stalking petitioners and otherwise appearing at the Woodward facility. On May 3, 2016, respondent, acting in propria persona , filed a motion to terminate the PPO. Respondent attached a document in which he declared that several of the averments in Patterson's affidavit were "not true" or constituted exaggerations. He also stated that he did not know Patterson either professionally or personally. On May 11, 2016, petitioners filed a response to respondent's motion to terminate the PPO, arguing that there was ample evidence to support the PPO, that respondent failed to establish that the PPO was unreasonable or lacked justification, that respondent effectively admitted many of Patterson's affidavit averments by not specifically responding to them, and that respondent's denials were not credible.
*908 On May 13, 2016, an evidentiary hearing was conducted on respondent's motion to terminate the PPO. Patterson and respondent testified at the hearing, providing testimony that mostly mimicked their allegations and responses in the documents already discussed. Respondent did concede that he had been in the vicinity of the Woodward facility in his vehicle on numerous occasions, giving rides to friends and acquaintances who worked at a business next to Woodward. He could not, however, recall or provide any specific names, referring to them as "[m]ostly Asian people."
According to Patterson, there had only been one letter addressed directly to him from respondent. Patterson did not testify to any other communications or correspondence between himself and respondent, and Patterson acknowledged that he had never personally met or spoken to respondent. With respect to the letter addressed to Patterson, he described its contents as follows:
Basically arguments and history about why he was terminated and why he was wrongfully terminated and how it really should've been the other individual that was lying and really should've been disciplined as opposed to him. Kind of a justification for maybe reinstatement.
Patterson replied, "No," when asked by the trial court whether the letter stated anything inappropriate.
Patterson testified about the documents that he had attached to the PPO petition, his familiarity with the substantive nature of those documents, and the circumstances surrounding their delivery to Woodward personnel. Patterson stated that Woodward had implemented additional security measures to address the concerns regarding respondent's conduct and that respondent had been detected in the area of Woodward's facility, apparently by surveillance cameras, 8 to 10 times between October 2015 and April 2016. Patterson testified that Woodward had hired an attorney crisis consultant to communicate with respondent in an effort to diffuse the situation and to help respondent move on with his life. However, despite numerous conversations or exchanges between the consultant and respondent, no progress was made. Patterson indicated that Woodward had involved the local police department, which had delivered a no-trespass letter to respondent on Woodward's behalf. The no-trespass letter was later mailed back to Woodward, torn in pieces. Patterson testified that on multiple occasions he had personally observed respondent's vehicle being operated or just sitting parked within view of the business. Not once did Patterson see respondent exit his vehicle; he would just sit in his car. Patterson asserted that he had never seen or dealt with anything like this before in his life and that he feared for his own safety, given that he was a representative of Woodward. Patterson further claimed that many of Woodward's employees were fearful of respondent, taking various precautionary safety measures, including, in one instance, obtaining a concealed pistol license.[4] Patterson conceded that, to the best of his knowledge, respondent had not entered upon Woodward's property following his termination.
About midway through the evidentiary hearing, the trial court indicated to petitioners' counsel its belief that Woodward could not obtain a PPO because it was not a living or natural person and that the *909 statutory scheme was intended "to protect people, not artificial people." Petitioners' counsel responded:
Certainly. Your Honor, I don't think we need to take your Honor's time today quibbling on that point of law. Mr. Patterson is going to be able to lay a factual foundation for a [PPO] in his favor.
At the end of the evidentiary hearing, the trial court informed the parties that it would take the matter under advisement, and on May 18, 2016, the court issued a written opinion and order. The court first quoted the language in MCL 600.2950a, emphasizing its reference to a petition being filed by "an individual." The trial court next quoted the definition of "stalking," as found in MCL 750.411h(1)(d), emphasizing the statute's reference to the terms "individual" and "person." The court then proceeded to rule as follows:
The court concludes that an anti-stalking injunction may only be issued on behalf of a human. Corporations or other artificial entities are incapable of being frightened, intimidated, etc.[5 ] Rather, it is the agents of that artificial entity who may petition for a ... [PPO.] The filing of a PPO on behalf of Woodward, Inc. is improper. Thus, the court will proceed to analyze whether Mr. Patterson has established the basis for the issuance of a PPO. The court concludes that he has not. The court concludes that the ex parte PPO issued by the court was improvidently granted and is terminated at respondent's request after a hearing was held.
Patterson acknowledges that he has never spoken to respondent nor has it been established that respondent attempted to communicate with Patterson, save one letter sent in 2015. Patterson acknowledged that the content of that letter was not concerning. Patterson admitted that the last communication from respondent received by anyone at Woodward was in the summer of 2015. Patterson went on to testify that he was "generally" intimidated by respondent in that Patterson was the plant manager. Finally, Patterson admitted that the filing of the PPO was done on behalf of Woodward and its members after consulting with the local police department and corporate counsel after respondent was seen in the area of Woodward's facility.
Since respondent's termination in 2013, it has not been established that respondent has entered or otherwise trespassed on Woodward's property. There has not been any unexplained damage to any of Woodward's property. It has not been established that respondent has damaged other members' property. It may have been established that specific individuals have historically been "stalked" by respondent, however, none of those individuals appeared at the hearing and none of those individuals, to this court's knowledge, have obtained a PPO against respondent.
While the issuance of a PPO on behalf of Woodward is improper, Woodward may have other injunctive remedies that it may wish to pursue.[6 ] Of course, future behavior may justify individuals to petition the court for a protection order.
This court is not minimizing what may be legitimate concerns on behalf of the "members" of Woodward. However, the *910 issuance of a PPO results in a significant loss of liberty and these orders may not be given simply to "make people feel better." The PPO is TERMINATED.
Petitioners appeal as of right.
II. ANALYSIS
A. STANDARDS OF REVIEW
This Court reviews for an abuse of discretion a trial court's decision whether to issue a PPO. Hayford v. Hayford , 279 Mich. App. 324, 325, 760 N.W.2d 503 (2008). A trial court abuses its discretion when its ruling falls outside the range of principled outcomes. Id . Underlying factual findings are reviewed for clear error. Id . We review de novo issues of statutory construction. Id . at 325-326, 760 N.W.2d 503. Whether a party has standing is also subject to de novo review. Barclae v. Zarb , 300 Mich. App. 455, 467, 834 N.W.2d 100 (2013).
B. PRINCIPLES OF STATUTORY CONSTRUCTION
In Whitman v. City of Burton , 493 Mich. 303, 311-312, 831 N.W.2d 223 (2013), the Michigan Supreme Court articulated the well-established principles governing the construction of a statute:
When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]
C. DISCUSSION
MCL 600.2950 concerns PPOs involving current or former spouses, individuals in dating relationships, and housemates, while MCL 600.2950a, as relevant here, regards stalking behavior and conduct that is not limited to certain existing relationships. MCL 600.2950a(1) provides:
[B]y commencing an independent action to obtain relief under this section, ... an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s. Relief under this subsection shall not be granted unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code.... Relief may be sought and granted under this subsection whether or not the individual to be restrained or enjoined has been charged or convicted under section 411h, 411i, or 411s of the Michigan penal code.... [Emphasis added.]
Although MCL 600.2950a has a definitional subsection, MCL 600.2950a(32), the term "individual" is not defined in that subsection. MCL 750.411h concerns stalking, MCL 750.411i pertains to aggravated stalking, and MCL 750.411s essentially regards online stalking. And each of these statutes refers to unlawful conduct directed at an "individual" or a "victim," statutorily defining the term "victim" as encompassing an "individual."
*911 MCL 750.411h(1)(c) through (f) ; MCL 750.411i(1)(c) through (g) ; MCL 750.411s(1), (2), (7), and (8)(k).[7]
Except as otherwise provided in MCL 600.2950 and MCL 600.2950a, an action for a PPO is governed by the Michigan Court Rules, with MCR 3.701 et seq ., applying to PPOs against adults. MCR 3.701(A). "The court must rule on a request for an ex parte [PPO] within 24 hours of the filing of the petition." MCR 3.705(A)(1). "The petitioner for a PPO bears the burden of proof." Lamkin v. Engram , 295 Mich. App. 701, 706, 815 N.W.2d 793 (2012). And this burden also applies when a petitioner seeks to establish "a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO...." Hayford , 279 Mich. App. at 326, 760 N.W.2d 503. A respondent may file a motion to terminate a PPO, MCR 3.707(A)(1)(b), in which case the "court must schedule and hold a hearing on [the] motion to ... terminate [the PPO] within 14 days of the filing of the motion," MCR 3.707(A)(2). See also MCL 600.2950a(13) and (14).
1. THE PPO AND WOODWARD
Again, only an "individual" may petition a trial court for a PPO under MCL 600.2950a or be a "victim" under the stalking statutes that are incorporated by reference in MCL 600.2950a, and we conclude that Woodward, a corporation, is not an individual for purposes of MCL 600.2950a and the stalking statutes. Therefore, Woodward lacked standing to seek a PPO under MCL 600.2950a.[8]
MCL 600.2950a(1) provides an individual with the opportunity and ability to petition a court for a PPO in order to restrain or enjoin another individual from engaging in stalking, as prohibited under the Michigan Penal Code, requiring the PPO petition to allege facts that constitute criminal stalking. We conclude that the import of the language in MCL 600.2950a is clear. The Legislature, for purposes of the applicability of MCL 600.2950a, envisioned situations in which an individual, who is being stalked, petitions a court for a PPO in order to halt the stalking of said petitioner. Accordingly, the term "individual," as used in MCL 600.2950a, must be construed consistently with the terms "victim" and "individual" as employed in the stalking statutes.
MCL 750.411h(1)(d) and MCL 750.411i(1)(e) both define "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel *912 terrorized, frightened, intimidated, threatened, harassed, or molested." (Emphasis added.) And MCL 750.411h(1)(c) and MCL 750.411i(1)(d) both define "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress."[9] (Emphasis added.) In turn, "unconsented contact" is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e) and MCL 750.411i(1)(f). The online-stalking statute requires conduct that "causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411s(1)(d).
As reflected in these statutory definitions, a stalking victim must show or exhibit certain human emotions and feelings, such as terror, fright, intimidation, or emotional distress. Therefore, an "individual" seeking a PPO under MCL 600.2950a, which incorporates the stalking statutes, must also show or exhibit certain human emotions and feelings as part of his or her effort to obtain a PPO. Indeed, a PPO petition must "allege[ ] facts that constitute stalking as defined in" any one of the three pertinent stalking statutes. MCL 600.2950a(1). This analysis necessarily excludes nonhuman entities, such as Woodward, from seeking and obtaining a PPO under MCL 600.2950a. Woodward, a corporation, simply cannot experience terror, fright, intimidation, or emotional distress.
Petitioners maintain that an "individual," as that term is used in MCL 600.2950a, does not have to be a "victim" under the stalking statutes in order to seek and obtain a PPO, thereby allowing Woodward to petition for a PPO, even though it was actually Woodward employees who were the victims of stalking. In support of this contention, petitioners argue that MCL 600.2950a employs the term "individual," whereas the stalking statutes refer to a "victim," and that the Legislature thus intended different treatment considering the use of different terminology. However, as already indicated in this opinion, the term "individual" is used interchangeably with the term "victim" in the stalking statutes, with the statutory definition of "victim" encompassing an "individual." MCL 750.411h(1)(f) ; MCL 750.411i(1)(g) ; MCL 750.411s(8)(k). Moreover, we do not read MCL 600.2950a as generally permitting even a human being who is not being stalked to file a PPO petition on behalf of another individual who is being stalked, unless the nonvictim is filing the petition in a legally recognized representative capacity.[10] Aside from the fact that Woodward is an artificial entity that cannot request a PPO on its own behalf, there is nothing in the record to suggest that any of Woodward's employees had authorized Woodward, or Patterson for that matter, to file the petition on their behalf, assuming that such authorization would even be legally recognizable. As the first word in its title provides, a PPO is "personal." Again, emotions such as terror, fright, intimidation, or emotional distress must be alleged and established as to the stalking victim, and absent a stalking victim's agreement to allow a legally recognized *913 representative to file a PPO petition on the victim's behalf, no PPO can issue. A stalking victim must absolutely be the individual requesting a PPO, either personally or by way of a legally recognized representative.
In further support of their position that a PPO petitioner need not be a victim under the stalking statutes and can be a corporation, petitioners quote MCL 450.1261(b) of Michigan's Business Corporation Act (BCA), MCL 450.1101 et seq ., which provides that a corporation can "[s]ue and be sued in all courts and participate in actions and proceedings, judicial, administrative, arbitrative, or otherwise, in the same manner as natural persons ." (Emphasis added.) Petitioners, however, neglect to acknowledge the prefatory language in MCL 450.1261, which indicates that a corporation's authority under the statute, including the power to sue in the same manner as a natural person, is "subject to any limitation provided ... in any other statute of this state...." For the reasons expressed, MCL 600.2950a and the incorporated stalking statutes do not permit Woodward to seek and obtain a PPO, effectively limiting the general corporate powers otherwise accorded to Woodward under the BCA. In sum, the trial court did not err in its construction of MCL 600.2950a and in its termination of the PPO with respect to Woodward.
2. THE PPO AND PATTERSON
For purposes of analyzing whether the trial court erred by terminating the PPO with respect to Patterson, we turn our attention to the definition of stalking. Again, MCL 750.411h(1)(d) and MCL 750.411i(1)(e) both define "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested."
The trial court declined to continue the PPO as to Patterson, considering that only one letter from respondent was directly addressed to Patterson, that this single letter, in itself, was not troubling to Patterson, that Patterson and respondent had never even personally spoken to each other, that Patterson was only generally intimidated by respondent because of his position at the plant, that Patterson's filing was more on behalf of Woodward and Woodward employees, and not so much for himself, that respondent never trespassed on Woodward's real property, that respondent never damaged any property belonging to Woodward or its employees, and that the last communication from respondent received by anyone at Woodward was in the summer of 2015 (the PPO petition was filed in April 2016).[11]
We hold that the trial court failed to take into consideration the totality of the circumstances, including, especially, respondent's recurring presence just outside the Woodward facility, which can reasonably be viewed as a troubling escalation of respondent's conduct. Respondent was *914 fired for harassing and bullying Woodward employees, one in particular, and his posting of news articles on a company bulletin board about men murdering or abusing spouses or girlfriends was particularly upsetting, menacing, and disturbing.[12] Following termination, respondent engaged in a campaign of writing letters and sending documents and communications to various persons employed by Woodward. When respondent did not succeed in obtaining any response acceptable to respondent for his self-perceived maltreatment by Woodward, he began appearing regularly around the plant, although not directly on Woodward property. The involvement of police and a crisis consultant by Woodward was to no avail; respondent continued with his conduct, tearing up a no-trespass letter and mailing it back to Woodward. Additional security measures were implemented because Woodward personnel were extremely concerned about the gravity of the situation. We emphasize that we are talking about a course of conduct that transpired over a three-year period, not simply a brief time span following a disgruntled employee's termination. Patterson saw respondent's vehicle near the Woodward plant numerous times, absent anyone ever exiting the vehicle, and security monitoring also established respondent's regular presence near the facility. Respondent's excuse or reason for being near and around the plant, i.e., that he was giving rides to people to a facility next to Woodward, was extremely dubious and bordered on ridiculous, given that he could not even provide a single name regarding his purported passengers and that his claim was entirely inconsistent with the evidence that he would just sit in his vehicle.
When one takes a step back and looks at all of the events that transpired over the three-year period, it becomes clear that respondent was now stalking the Woodward plant and the employees who worked at the facility, one of whom was Patterson. Stated otherwise, under the totality of the circumstances, respondent was engaged in a willful course of conduct involving repeated or continuing harassment of Woodward employees, including Patterson, that would have caused a reasonable person to feel frightened, intimidated, or threatened and that actually caused Patterson to feel frightened, intimidated, or threatened. MCL 750.411h(1)(d) and MCL 750.411i(1)(e). Although Patterson only personally received one fairly innocuous letter from respondent, Patterson, along with other Woodward employees, was subjected to respondent's stalking conduct. The potential for workplace violence cannot be overstated.[13] In sum, the trial court clearly erred by finding that Patterson was not being stalked, and it abused its discretion by failing to continue the PPO with respect to Patterson.
3. THE PPO AND WOODWARD EMPLOYEES
Petitioners contend that Patterson could petition for a PPO on behalf of other employees at Woodward, renewing their argument that the "individual" seeking a PPO under MCL 600.2950a need not be a "victim" under the stalking statutes. We have already rejected this legal premise. If other Woodward employees wish to obtain *915 a PPO for themselves, they will need to file the necessary petition.
III. CONCLUSION
The trial court did not err by ruling that Woodward could not legally seek and obtain a PPO under MCL 600.2950a in light of the fact that Woodward is a business entity, not a human being. Also, Woodward could not obtain a PPO on behalf of its employees as their representative because they did not personally join in the PPO petition, and there is no indication that they authorized Woodward to act and file the petition on their behalf, assuming that such authorization would have been legally recognizable. The trial court did abuse its discretion by not continuing the PPO as to Patterson, considering that the evidence plainly demonstrated that respondent was engaged in stalking Woodward employees working at the plant, which necessarily included Patterson, and that Patterson was in fear because of the stalking. We remand for entry of an order denying respondent's motion to terminate the PPO in regard to Patterson.
Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded under MCR 7.219(A).
Hoekstra, P.J., and K. F. Kelly, J., concurred with Murphy, J.

The statute also provides for PPOs in circumstances involving sexual assault victims, MCL 600.2950a(2) and (3) ; however, that component of the statute is not relevant to this case.

The final two sentences in one letter read, "I'm a firm believer in karma and what you put out there, good or bad you will get back ten fold. Enjoy your miserable life ahead of you."

The e-mail reflected that it came from someone other than respondent; however, petitioners claimed that respondent was the person actually behind the e-mail.

On cross-examination of Patterson, respondent, who was not represented by counsel, asked whether the employee who had obtained a concealed-carry weapons license was permitted to carry a gun on the grounds of the facility, but the trial court barred that line of questioning as irrelevant.

The statutory definition of "stalking" speaks, in part, of conduct that actually causes a victim to feel frightened or intimidated. MCL 750.411h(1)(d).

Our opinion pertains solely to Woodward's standing to seek a PPO under MCL 600.2950a and, like the trial court, we leave open the possibility that other injunctive remedies may be available to Woodward to address the situation.

A "victim" is "an individual who is the target of a willful course of conduct involving repeated or continuing harassment." MCL 750.411h(1)(f) ; MCL 750.411i(1)(g). Under MCL 750.411s(8)(k), a "victim" is "the individual who is the target of the conduct elicited by the posted message or a member of that individual's immediate family."

As an initial observation, it is arguable that petitioners waived their claim that Woodward can obtain a PPO under MCL 600.2950a, given that counsel indicated, at the evidentiary hearing, that petitioners would not take up the trial court's time "quibbling" over the court's view that Woodward, as a business entity, could not obtain a PPO under the statute. See Marshall Lasser, PC v. George , 252 Mich. App. 104, 109, 651 N.W.2d 158 (2002) (a party cannot complain on appeal about a matter to which it acquiesced below, signifying a waiver). Minimally, the issue was not preserved at the time. We shall, however, overlook the preservation failure and proceed to examine the issue, given that it presents "a question of law and the facts necessary for its resolution have been presented." Smith v. Foerster-Bolser Constr., Inc , 269 Mich. App. 424, 427, 711 N.W.2d 421 (2006).

"Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." MCL 750.411h(1)(c) and MCL 750.411i(1)(d).

For example, an attorney has the authority to sign a PPO petition on behalf of a client. MCR 3.703(B)(6).

Contrary to petitioners' argument, we do not view the trial court's ruling as a determination that respondent did not generally engage in stalking the Woodward plant or any of its employees; rather, the court couched its ruling in terms of whether Patterson alone had been stalked, even though the court made some broad observations and findings in doing so. Regardless, as discussed later, our holding essentially dispenses of petitioners' argument, and again, the question of whether Woodward employees were stalked, other than Patterson, is not relevant to this case because those employees were not covered by the petition.

At the evidentiary hearing, when asked why he had posted the materials on the bulletin board, respondent testified, "I wanted to remind myself that I should watch what I say or how I act around certain people at work."

We also conclude that respondent was not engaged in any constitutionally protected activity or conduct that served a legitimate purpose. MCL 750.411h(1)(c) and MCL 750.411i(1)(d).