*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DWJ,

        Petitioner-Appellee,

v

CLB,

        Respondent-Appellant.

UNPUBLISHED
November 2, 2023

No. 363324
Wayne Circuit Court
Family Division
LC No. 22-108559-PH

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Petitioner, the city attorney for the city of Inkster, obtained an ex parte personal protection order against respondent, who moved to have it terminated on the ground that all the complained of conduct was constitutionally protected speech. The trial court denied the motion, holding that respondent's repeated conduct of showering petitioner with offensive commentary, while sometimes displaying critical caricatures of petitioner, both in-person and electronically, constituted stalking. The court also held that respondent's communications were not constitutionally protected expression because they violated petitioner's "right to be left alone." Respondent appeals as of right. We reverse.

## I. BACKGROUND

Respondent is a private citizen who has often engaged petitioner, a city attorney, through e-mail and at public meetings, to express his opinion of petitioner's job performance through insulting utterances and displays of petitioner's face in unflattering and embarrassing settings. Petitioner testified that respondent first contacted him by e-mail at his work address in January 2020 after petitioner denied one of respondent's Freedom of Information Act (FOIA)[1] requests. Thereafter, respondent filed many additional FOIA requests and lawsuits. According to respondent, petitioner "began a pattern of appearing at the public meetings and ridiculing myself,

---

[1] MCL 15.231 *et seq.*

ridiculing my clients, depicting me, along with elected officials in defamatory and pornographic" ways. Petitioner sought the protective order after respondent appeared at a city council meeting with a poster depicting petitioner's wife disparaging him to the mayor, while their heads were resting on pillows. Petitioner alleged that respondent then called him a "chump" when petitioner walked near him, and that he thought that respondent was armed because he had informed officials that he would exercise his permit to carry a concealed weapon during public meetings and then appeared with a small tote bag on his body.

On July 22, 2022, the trial court issued an ex parte personal protection order on behalf of petitioner against respondent. On October 7, 2022, another trial court judge denied respondent's motion to terminate the PPO, holding that respondent's repeated conduct of displaying critical caricatures of petitioner, with commentary, to petitioner, both in-person and electronically, constituted stalking. The trial court further held that respondent's communications were not protected by the First Amendment because they violated petitioner's "right to be left alone." Respondent now appeals as of right.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision regarding whether to issue, or terminate, a PPO for an abuse of discretion. See *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020). The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court's findings of fact are reviewed for clear error. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 717-718.

This Court reviews constitutional questions de novo. *TM v MZ (On Remand)*, 326 Mich App 227, 236; 926 NW2d 900 (2018).

## III. CONSTITUTIONALLY PROTECTED SPEECH

The purpose of personal protection orders is to protect individuals "who are maliciously followed, harassed, or intimidated by stalkers." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). A petition for a PPO is governed by the court rules except as otherwise provided in MCL 600.2950 and MCL 600.2950a. *TT*, 334 Mich App at 439. MCL 600.2950a is the nondomestic PPO statute, which "addresses stalking behavior or conduct that is not limited to certain existing relationships."

In a motion to terminate an ex parte PPO, the petitioner bears the burden of persuasion. *TM*, 326 Mich App at 236. A court may not grant a nondomestic PPO "unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code." MCL 600.2950a(1). In this case, the trial court stated that "[p]etitioner testified to [a] course of conduct of stalking and repeated unconsented contact by Respondent which caused him to feel emotional distress, terrorized, frightened, intimidated, threatened and harassed," citing MCL 750.411h(1)(d) and MCL 750.411h(1)(a).

At the hearing on the motion to terminate the PPO, petitioner testified that he denied respondent's initial FOIA request, that respondent filed subsequent FOIA requests and lawsuits, and he described respondent's pattern of appearing at public meetings, including some that were not of the city council, for approximately one year. According to petitioner, respondent commented negatively about petitioner's job performance at every meeting petitioner attended. Petitioner testified about, and presented numerous exhibits to show, respondent's "constant," "weekly, sometimes daily," e-mails to petitioner, beginning in June 2020, some of which were also sent to members of petitioner's law firm or other public officials, which typically included depictions of petitioner's face superimposed on the body of another person or animal in an offensive way, along with statements disparaging petitioner's competence or personal characteristics.

Respondent does not dispute petitioner's assertions regarding the authenticity, frequency, tone, or contents of his communications, but argues that "everything the appellee alleged in his petition and/or ruled on by the trial court in its opinion and order is constitutionally protected speech and activity." We agree.

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." The Michigan Constitution provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech." Const 1963, art 1, § 5. Speech over the Internet is constitutionally protected " 'to the same extent as speech over other media.' " *TM*, 326 Mich App at 237, quoting *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 256, 833 NW2d 331 (2013). However, "the freedom of speech is not absolute," and such "well-defined and narrowly limited" classes of speech as "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct" may be suppressed without offending constitutional principles. *Buchanan v Crisler*, 323 Mich App 163, 181-182; 922 NW2d 886 (2018) (cleaned up).

The extent to which respondent's offensive speech targeting petitioner was protected is dependent on petitioner's characterization as either a public or private figure. The trial court did not make an explicit determination in this regard. On appeal, respondent takes the position that petitioner was a public figure, and petitioner argues otherwise.

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v Robert Welch, Inc*, 418 US 323, 342; 94 S Ct 2997; 41 L Ed 2d 789 (1974). A person who has acquired "pervasive fame or notoriety" may become a public figure "for all purposes and in all contexts." *Id.* at 351. However, "[m]ore commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." *Id.* Also bearing on the question is that MCL 750.478a(7)(d)(*ii*) defines "public officer" as a person "elected or appointed" to a "public office of a city, village, township, or county in this state." Not in dispute is that, at the time relevant, petitioner held municipal appointments as Inkster's city attorney, and as a member of the City of Detroit Board

of Ethics. We conclude, as a matter of law, that, in light of the obvious focus of the speech at issue on matters of public interest relating to local politics, and of petitioner's statutorily recognized status as a public officer, petitioner was a public figure for present purposes.

The trial court held that respondent's political commentary toward petitioner lost constitutional protection because it infringed on petitioner's "right to be left alone," explaining as follows:

> When balancing the right of every person to be let alone with the balancing of the right of others to communicate, this Court finds that Petitioner's right to be left alone has been compromised. See *Hill v Colorado*, 530 US 703, 717; 120 Ct 2480; 147 Ed 2d 597 (2000). The right to be let alone is that right which the PPO statute seeks to protect, by criminalizing stalking except where the conduct is constitutionally protected. Here, Respondent's direct targeting of Petitioner, . . . which Respondent acknowledged doing at the hearing held on August 4, 2022, lost its protected character.

In *Hill*, 530 US at 707, the United States Supreme Court considered a state statute that prohibited, within 100 feet of the entrance to any healthcare facility, "any person to 'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person . . . .' " The Court discussed the lack of constitutional protection for speech that "is so intrusive that the unwilling audience cannot avoid it," which follows from the "right to be let alone," which includes the "right to avoid unwelcome speech." *Id*. at 716-717. In holding that the statute did not violate the First Amendment, the Court balanced the "substantial" right of "freedom to communication" with the rights "to be let alone" and to "passage without obstruction," and concluded that the statute applied to only "communications that interfere with" the latter rights. *Id*. at 718-719. However, the Court stressed that the statute "simply establishes a minor place restriction," leaving protesters free "to educate unwilling listeners on any subject" as long as they "not approach within eight feet to do so." *Id*. at 723.

The instant case is distinguishable from *Hill*, which considered a content-neutral state law, rather than overtly offensive speech. The parties have presented no binding cases that apply a "right to be left alone" to overcome constitutional protections in the context of a PPO. The *Hill* Court recognized that the "common-law 'right' " to be left alone "is more accurately characterized as an 'interest' that States can choose to protect in certain situations." *Id*. at 717 n 24, citing *Katz v United States*, 389 US 347, 350-351; 88 S Ct 507; 19 L Ed 2d 576 (1967). The Court further clarified that "whether there is a 'right' to avoid unwelcome expression" was not at issue in that case, because the subject statute existed "not to protect a potential listener from hearing a particular message," but "to protect those who seek medical treatment from the potential physical and emotional harm suffered when an unwelcome individual delivers a message (whatever its content) by physically approaching an individual at close range." *Hill*, 530 US at 718 n 25. Additionally, in this case, the PPO largely targeted e-mail messages, which were not unavoidable insofar as they may be left unopened or possibly even blocked. We therefore conclude that, in prioritizing petitioner's interest in being let alone over respondent's constitutional right to communicate an

opinion on public concerns to public officials, even in ways that are offensive, crude, or childish, the trial court applied the holding of *Hill* too broadly.

When online messages are posted "solely" to "harass a private victim in connection with a private matter," that activity may be enjoined by PPO, but when "the information relates to a public figure and an important public concern," a PPO may not be issued to restrict the speech. *Buchanan*, 323 Mich App at 188-189. "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* at 189 (cleaned up). Speech may not be prohibited because it is "offensive or disagreeable," or regulated on the basis of whether its message is favored or disapproved. *TM*, 326 Mich App at 238 (citation omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Buchanan*, 323 Mich App at 190 (cleaned up). In weighing whether to issue a PPO, a trial court should "take into consideration the totality of the circumstances." *Patterson v Beverwyk*, 320 Mich App 670, 688; 922 NW2d 904 (2017).

In determining whether a PPO is necessary, a trial court may consider the petition, along with "testimony, documents, and other evidence proffered." *Lamkin v Engram*, 295 Mich App 701, 711; 815 NW2d 793 (2012). In this case, respondent's messages were to petitioner, and sometimes other public officials, commenting on petitioner's competence in the performance of his public duties. The caricatures, or cartoons, that respondent conveyed contained statements relating to only matters of public concern. Thus, the messages were protected commentary about public officials and public matters.

This Court has recognized the need to determine "whether postings involve a matter of public concern or whether the postings are a thinly veiled attempt to immunize a private harassment campaign as a matter of public concern." *Buchanan*, 323 Mich App at 190-191. In this case, however, the messages at issue generally did not stray from communications through official channels concerning respondent's competence in, or fitness for, public office.

Conduct that is constitutionally protected may not be considered harassment, and thus may not be considered stalking. *Nastal*, 471 Mich at 723; *Lamkin*, 295 Mich App at 711. See also MCL 750.411h(1)(c) ("Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose."). MCL 750.411s "does not prohibit constitutionally protected speech or activity." MCL 750.411s(6). "MCL 750.411s may not be employed to prevent speech relating to public figures on matters of public concern." *Buchanan*, 323 Mich App at 191. See also *TT*, 334 Mich App at 447.

However, as stated, constitutional expressive rights are not absolute, and the categories of speech that are not protected include "defamation, fighting words, words inciting imminent lawless action, and true threats." *TM*, 326 Mich App at 243.

"Fighting words include those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction . . . ." *TM*, 326 Mich App at 238 (cleaned up). Petitioner argues that respondent's actions of bringing a poster of the heads of petitioner's wife and the mayor next to each other on pillows, with a representation that his wife was telling the mayor that petitioner was a poor city attorney, and also calling petitioner a "chump" as petitioner walked by, were designed to elicit a confrontation, and thus that those gestures constituted fighting words. Because the trial court held that respondent's communications were not constitutionally protected for other reasons, it did not consider the fighting-words exception. We, however, are satisfied that the undisputed facts establish that there were no fighting words in this situation.

We agree with petitioner that depicting petitioner's wife, apparently in bed with another man, to communicate that respondent thought that petitioner was performing poorly, was distasteful and provocative, as was calling him "chump" while the two were in proximity. However, the "rhetorical hyperbole and imaginative expression often found in satires, parodies, and cartoons," even when intended to be highly offensive to the target, should not be interpreted as factual recitations. *Ghanam v Does*, 303 Mich App 522, 545-546; 845 NW2d 128 (2014). Casual use of such epithets as "chump" in the context of public comments are typical of the exaggerated nature of "core political speech." *Id*. at 546. The situation in which respondent insulted petitioner through invoking his wife was not "inherently likely to provoke violent reaction," considering that he communicated the message in a public political forum with law-enforcement officers present. Further, the offending epithet and graphic display did not significantly depart from respondent's routine e-mailed political insults or provocations, and was not likely to be taken more seriously simply because respondent used petitioner's wife as a prop to convey his disparaging sentiments. We hold that respondent's poster and actions were tasteless, boorish, and offensive, but did not reach the level of being "inherently likely to provoke violent reaction" in an ordinary person.

In sum, because respondent's speech was constitutionally protected, the trial court erred as a matter of law in finding that it violated petitioner's right to be left alone, and thus abused its discretion by denying respondent's motion to terminate the PPO.[2]

---

[2] Respondent also argued that the court erred by denying his motion to terminate the PPO because the judge who issued the ex parte PPO did not provide any written reasons for its issuance, as required by MCR 3.705(A)(2) and MCL 600.2950a(7). We agree that the PPO was not in conformity with MCL 600.2950a(7). But the procedural objection became moot when the trial court agreed with petitioner's argument that the purpose of the motion hearing was to determine whether petitioner had demonstrated a need for a PPO. Further, the trial court issued an opinion and order following an evidentiary hearing detailing the reasons for upholding the PPO, which cured, or rendered harmless, the issuing judge's error. See *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018) (holding that an error is considered harmless when "based on review of the entire record, it is more probable than not that the error was not outcome determinative.").

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel