Riordan, P.J.
*229 This case returns to us on remand from our Supreme Court. When we originally heard this *230 case, we dismissed the appeal for mootness. TM v MZ ,[1] unpublished per curiam opinion of the Court of Appeals, issued January 19, 2017 (Docket No. 329190). The Supreme Court reversed, reasoning that "the mere fact that the instant [personal protection order (PPO) ] expired during the pendency of this appeal does not render this appeal moot," and remanded the case to us "for consideration on the merits." T.M. v. M.Z. , 501 Mich. 312, 320, 916 N.W.2d 473 (2018). Because the amended PPO was issued on the basis of respondent's constitutionally protected speech and amounted to an unconstitutional prior restraint on his speech, we reverse the trial court. *904 I. BACKGROUND FACTS AND PROCEDURAL HISTORY
Petitioner, TM, and respondent, MZ, are neighbors in Cottrellville Township, Michigan. Respondent is a former trustee of Cottrellville Township and petitioner also has had some involvement in local politics, presently as a member of the township's Parks and Recreation Committee. She also has participated in successful recalls of respondent and the supervisor of Cottrellville Township.
Petitioner and respondent have an acrimonious past. Notably, respondent's mother (with whom respondent lived) obtained a PPO against petitioner's husband after he allegedly assaulted her. The impetus for this case was the highly inflammatory and negative series of comments respondent posted online about petitioner and her family. Respondent had posted negative comments about petitioner on Facebook and *231 through private messaging applications as far back as 2014, but when the nature of these postings, in petitioner's words, "escalated," she petitioned the trial court on July 27, 2015, for a PPO. In an attachment to the petition, petitioner identified eight dates on which respondent allegedly made derogatory comments about her and her family by way of posts on his own Facebook page, on public Facebook pages, or in private messages to undisclosed recipients. Specifically, the attachment stated:
Below are some of the instances where Respondent used the internet or a computer or other electronic medium to post both public and private messages for the purpose of terrorizing, frightening, intimidating, threatening, or harassing me.
July 6, 2015
Respondent made several comments on a post in the St. Clair County, Michigan page on Facebook, including but not limited to[:] calling me a criminal, accusing me of hiding criminals, having illegal trailers on my property, posting pictures of my yard, [stating] that I meet the requirements of "hurting someone" and that I'm a criminal.
July 6, 2015
Respondent sent a private Facebook message to multiple people, with regards to the above mentioned comments made on the St. Clair County, Michigan page, saying that I am criminal, I hide criminals, and saying things about the death of my son, which were not only derogatory and disgusting, but were complete lies, and how it was because of my parenting. These comments were in addition to other things.
May 4, 2015
Respondent posted on his Facebook page a picture of a car and a letter with a heading of "Attempted abduction in St. Clair Count [sic], Please share this Info!" Respondent *232 then commented on the post that if there were any questions about the vehicle to join the St. Clair County, Michigan Facebook group.
Respondent also commented on this post that the driver of the vehicle "was involved in a form of attempted abduction of a child" and further down respondent commented "I actually saw a similar vehicle at [TM's address], where it was there only a couple of minutes." This is my address.
Respondent also made a comment on the post about the car on the St. Clair County, Michigan Facebook page wherein he stated "a vehicle just like that was at [petitioner's address] today ... It watched my home, and then pulled into [petitioners's address]-an address notorious for everything from crime to severe ordinance violations that never go away. It was only there for a few minutes."
April 22, 2015 *905 Respondent made a comment on a post about a stolen bbq to "Go look at [petitioner's address] ... It is a virtual junk yard of items picked up from the garbage of other[s]".
September 7, 2014
Respondent commented on a post in the St. Clair County, Michigan Facebook page about motorcycles stolen out of Auburn Hills, "... my neighbor is at [petitioner's address]. ... I saw them burning parts and burying them illegally in the ground before. I will be on the lookout for you."
August 10, 2014
Respondent wrote a post on the Facebook Cottrellville Township, Michigan page that included stating we had a "junkyard" and "two illegal commercial trailers".
Respondent then made a comment on his post stating "... Bob confirmed there is [sic] severe blight and health violations at [petitioner's address] ..."
Respondent later puts a comment on his post with a Court Case [identification] number to look me up in the court docket.
*233 Respondent later comments on his post that I was taken to court and at one time had 12 vehicles in my front yard.
June 2, 2014
Respondent commented on a post on the St. Clair County, Michigan Facebook page saying that my yard is used as an "illegal junkyard" and posts the link to a video.
July 24, 2014
Respondent sent a message to a private citizen making derogatory comments including that "that family is into drugs."
Further, in a Facebook message to an undisclosed recipient on July 6, 2015, respondent shared his comments and opinions on petitioner's parenting abilities, specifically accusing petitioner of allowing her children to partake of illegal drugs, and also discussed the alleged circumstances of her son's death.
On July 28, 2015, the trial court granted petitioner's petition and entered a PPO against respondent. The PPO prohibited respondent from "stalking [petitioner] as defined under MCL 750.411h and MCL 750.411i," and prohibited him from "posting a message [about petitioner] through the use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s" On August 3, 2015, respondent moved to terminate the PPO, arguing that petitioner merely was annoyed with his comments and that because there were no allegations of actual, threatened, or attempted violence, her proper remedy was a lawsuit for defamation. At the August 20, 2015 hearing on respondent's motion, the trial court placed both parties under oath. Petitioner stated that, other than being his neighbor, she had no relationship with respondent, and she noted that in the online postings respondent said he was using binoculars *234 to see what was going on in her yard, as well as taking pictures of her and her property, which made her fearful "as to why he is doing this." Petitioner stated that she found respondent's conduct harassing and that she just wanted him to leave her and her family alone. Noting that respondent's comments were personal attacks against her and her family, petitioner stated that respondent's actions put her "in fear of what [respondent] is going to do next" because of the escalation of the nature of the postings. Petitioner noted that respondent owned a firearm, and that she was in fear for her children and her grandchild.
Respondent's counsel argued that respondent's conduct consisted only of speech, "not actions, not threats, not anything."
*906 Respondent's counsel reiterated that petitioner's remedy was a defamation claim, not a PPO, and that the court-imposed prohibitions related to stalking were inappropriate. According to respondent's counsel, the PPO was a restraint on respondent's speech that impermissibly infringed his First Amendment rights. While respondent's counsel characterized petitioner as actively involved in local politics, petitioner testified that she did not file the petition to recall respondent as a township trustee but that she did participate in circulating the recall petition. After hearing oral argument, the trial court modified the PPO so that respondent only was prohibited from posting messages "pursuant to MCL 750.411(s)." The trial court subsequently entered an amended order modifying the PPO. The amended PPO provides that respondent is prohibited from "posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s," and that the order remained in effect until January 28, 2016. There *235 is no indication that the trial court renewed this amended PPO, and it expired while the appeal in this Court was pending.
We do not disagree with petitioner or the trial court that respondent's statements often were inappropriate, at times crude, and even sometimes, with respect to the death of petitioner's son, offensive. Inappropriate, crude, and offensive language, however, is not necessarily excepted from constitutional protection. For that reason, we cannot adopt the trial court's preference to treat a PPO, which in this case is a prior restraint on respondent's speech, as a means "to help supplement the rules that we all live in society by." The First Amendment of the United States Constitution demands that we not treat such speech-based injunctions so lightly.
II. CONSTITUTIONALLY PROTECTED SPEECH
Respondent argues that the trial court abused its discretion by issuing the PPO solely on the basis of speech that was entitled to constitutional protection. We agree.
A. STANDARD OF REVIEW
"We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order." Hayford v. Hayford , 279 Mich. App. 324, 325, 760 N.W.2d 503 (2008). " '[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes.' " Sanders v. McLaren-Macomb , 323 Mich. App. 254, 264, 916 N.W.2d 305 (2018), quoting Saffian v. Simmons , 477 Mich. 8, 12, 727 N.W.2d 132 (2007) (alteration in Sanders ). "A trial court ... necessarily *236 abuses its discretion when it makes an error of law." Kostadinovski v. Harrington , 321 Mich. App. 736, 743, 909 N.W.2d 907 (2017) (quotation marks and citation omitted). Constitutional issues, as questions of law, are reviewed de novo. Winkler v. Marist Fathers of Detroit, Inc., 500 Mich. 327, 333, 901 N.W.2d 566 (2017). Similarly, questions of statutory interpretation also are reviewed de novo. Millar v. Constr. Code Auth. , 501 Mich. 233, 237, 912 N.W.2d 521 (2018).
B. APPLICABLE LAW
In this case, petitioner sought a PPO pursuant to MCL 600.2950a(1), which allows for "an independent action to obtain ... a [PPO] to restrain or enjoin an individual from engaging in conduct that is prohibited under ... MCL 750.411h, 750.441i, and 750.411s." In order to warrant a PPO pursuant to MCL 600.2950a(1), *907 the petition must "allege[ ] facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code ...." "[T]he petitioner [has] the burden of persuasion in a hearing held on a motion to terminate or modify an ex parte PPO." Pickering v. Pickering , 253 Mich. App. 694, 699, 659 N.W.2d 649 (2002). Accordingly, petitioner had to present sufficient evidence of conduct prohibited by MCL 750.411s to "justify continuation of the PPO." Pickering , 253 Mich. App. at 699, 659 N.W.2d 649 (quotation marks omitted); MCL 600.2950a(1).
Conduct prohibited by MCL 750.411s includes posting "a message through the use of any medium of communication ... without the victim's consent, if ... [t]he person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim,"
*237 MCL 750.411s(1)(a), and by posting the message, the person "intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411s(1)(b). The statute also requires proof that conduct arising from posting the message would cause a reasonable person, MCL 750.411s(1)(c), and did cause the victim, MCL 750.411s(1)(d), to "suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." However, MCL 750.411s"does not prohibit constitutionally protected speech or activity." MCL 750.411s(6). Therefore, in order to warrant a PPO pursuant to MCL 600.2950a(1), the trial court had to find that respondent's postings-his speech-were not constitutionally protected. MCL 750.411s(6).
"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law ... abridging the freedom of speech.' " Virginia v. Black , 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), quoting U.S. Const., Am. I. "The United States Supreme Court has held that the federal constitution protects speech over the Internet to the same extent as speech over other media." Thomas M Cooley Law Sch. v. Doe 1 , 300 Mich. App. 245, 256, 833 N.W.2d 331 (2013), citing Reno v. American Civil Liberties Union , 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). However, the "right to speak freely is not absolute." Cooley , 300 Mich. App. at 256, 833 N.W.2d 331, citing Chaplinsky v. New Hampshire , 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). For example, "[l]ibelous utterances [are] not ... within the area of constitutionally protected speech," and a state may therefore enact laws punishing them. Beauharnais v. Illinois , 343 U.S. 250, 266, 72 S.Ct. 725, 96 L.Ed. 919 (1952).
*238 Prohibitions relating to content, however, are few, because of the First Amendment's "bedrock principle" that an idea cannot be prohibited "simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson , 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). "The government may not regulate [speech] based on hostility-or favoritism-towards the underlying message expressed." R. A. V. v. City of Saint Paul, Minnesota , 505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "The First Amendment permits restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Black , 538 U.S. at 358-359 (quotation marks and citation omitted). Thus, the First Amendment does not protect obscenity or defamation, within certain limits. R.
*908 A. V., 505 U.S. at 383, 112 S.Ct. 2538. "[A] State may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace," including "fighting words," "inciting or producing imminent lawless action," and "true threat[s]." Black , 538 U.S. at 359, 123 S.Ct. 1536 (quotation marks and citation omitted).
C. ANALYSIS
The trial court abused its discretion by refusing to terminate the PPO. Respondent's Facebook posts and messages, quite clearly, were not "fighting words," did not "incit[e] or produc[e] imminent lawless action," and were not "true threat[s]." Id. Fighting words include " 'those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction ....' " Id ., quoting *239 Cohen v. California , 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). There is nothing in the record to support that when respondent made any of the foregoing statements, he did so in a situation in which it was "inherently likely to provoke violent reaction," considering he made the statements on the Internet, in a public forum, far removed from any potential violence. See Black , 538 U.S. at 359 A "true threat," meanwhile, "encompass[es] those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. , 123 S.Ct. 1536. While respondent's posts were undoubtedly in poor taste and offensive, they did not reach the level of intending the commission of an unlawful act of violence. See id.
Further, respondent's statements did not "incit[e] or produc[e] imminent lawless action ...." Id. The closest that respondent's speech came to that standard was his assertion that someone should "[g]o look at" petitioner's address in search of a stolen grill. That statement was not likely to incite illegal activities, because "looking at" an individual's house, yard, or property is not illegal. Had respondent urged the individual to break into petitioner's house or to otherwise trespass on her property, there would be a legitimate question regarding whether his speech was protected. As the record stands, there was no such suggestion by respondent. See Id.
The trial court noted that respondent's statements regarding petitioner's alleged illegal activities, the most serious of which concerned involvement in a kidnapping, likely would have produced unconsented contact from the community. Regardless of the veracity of that assertion by the trial court, the United States Supreme Court has determined in similar cases that *240 the respondent's speech still was protected. See Org. for a Better Austin v. Keefe , 402 U.S. 415, 417-419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) (holding that First Amendment protection applied to the distribution of leaflets even when those leaflets accused an individual of racism, provided personal information about the person including his telephone number, and urged the recipients of the leaflets to contact him); see also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 909-910, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (holding that "[s]peech does not lose its protected character," even when the speech involved publicly listing the names of individuals that did not participate in a boycott, which undoubtedly was meant to lead to unconsented contact with those individuals, so as to "persuade [them] to join the boycott through social pressure and the 'threat' of social ostracism"). At its very base, the exception to the First Amendment for incitement of imminent lawless action requires *909 that the incitement be for actually illegal actions, not just inconvenient or aggravating ones. See id. at 908-910."There is no categorical 'harassment exception' to the First Amendment's free speech clause." Saxe v. State College Area Sch. Dist. , 240 F.3d 200, 204 (C.A.3 2001) In this case, the record does not support that respondent's statements were intended to incite imminent lawless action. See Keefe , 402 U.S. at 417-420, 91 S.Ct. 1575.
Considering that these exceptions to constitutionally protected speech do not apply in the instant case, the only remaining category of content-based prohibitions that might be applicable is defamation. Defamatory speech is not protected by the United States Constitution. See Beauharnais , 343 U.S. at 266, 72 S.Ct. 725. "A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing *241 with him." Lawrence v. Burdi , 314 Mich. App. 203, 214, 886 N.W.2d 748 (2016) (quotation marks and citation omitted). A defamatory statement, by its very definition, is one that is false. Edwards v. Detroit News, Inc., 322 Mich. App. 1, 12, 910 N.W.2d 394 (2017). "To be considered defamatory, statements must assert facts that are 'provable as false.' " Ghanam v. Does, 303 Mich. App. 522, 545, 845 N.W.2d 128 (2014), quoting Milkovich v. Lorain Journal Co. , 497 U.S. 1, 19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Generally, "[a]ccusations of criminal activity are considered 'defamation per se' under the law and so do not require proof of damage to the plaintiff's reputation." Ghanam , 303 Mich. App. at 545, 845 N.W.2d 128.
As an initial step, a trial court must determine whether respondent's statements were "provable as false" and therefore capable of defamatory meaning, Milkovich , 497 U.S. at 19, 110 S.Ct. 2695, because "[w]hether a statement is actually capable of defamatory meaning is a preliminary question of law for the court to decide." Sarkar v. Doe, 318 Mich. App. 156, 179, 897 N.W.2d 207 (2016) (quotation marks omitted).[2] However, while determining whether a statement is capable of defamatory meaning is a question of law for courts to decide, whether the statements actually were false and defamatory is not. See id . ; see also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 521, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (holding that falsity is a question of fact *242 for a fact-finder to determine when differing evidence is presented).
Here, the trial court never made a determination whether the accusations made by respondent were false. When respondent stated that he could offer proof that his statements were true, the trial court refused to consider the evidence or to hold an evidentiary hearing. The trial court reasoned that an inquiry regarding falsity was unnecessary because, in the court's own words, "I don't believe because of [petitioner's] status that truth is an absolute defense to this, and so I'm going to deny your request for an evidentiary hearing because I don't think there's any need to do that." The trial court also stated, when discussing respondent's accusation *910 that petitioner had assisted in a kidnapping, "whether or not that actually happened, I don't think that's the standard."
The trial court was incorrect. "Truth is an absolute defense to a defamation claim." Wilson v. Sparrow Health Sys. , 290 Mich. App. 149, 155, 799 N.W.2d 224 (2010). The rule applies even when the person who allegedly has been defamed is a private citizen and the alleged defamer is not a member of the media. Hawkins v. Mercy Health Servs., Inc., 230 Mich. App. 315, 333, 583 N.W.2d 725 (1998). Accordingly, in order for respondent's statements to have been considered defamatory they must have been false, but the trial court, determining that such an inquiry was unnecessary, refused to accept evidence on the issue or to even make the determination. Consequently, we have not been provided with a record that would allow for us to make a determination whether respondent's statements were defamatory.[3] See id.
*243 In sum, the trial court entered the PPO pursuant to MCL 600.2950a, finding a violation of MCL 750.411s. The trial court determined that respondent had violated MCL 750.411s by posting certain messages on Facebook. Pursuant to MCL 750.411s(6), however, the statute "does not prohibit constitutionally protected speech or activity." Speech over the Internet is entitled to First Amendment protection in the same manner as traditional speech. Cooley , 300 Mich. App. at 256, 833 N.W.2d 331, citing Reno , 521 U.S. at 870, 117 S.Ct. 2329. Constitutionally protected speech includes all speech, except that falling into certain categories, including defamation, fighting words, words inciting imminent lawless action, and true threats. Black , 538 U.S. at 359, 123 S.Ct. 1536 ; Beauharnais , 343 U.S. at 266, 72 S.Ct. 725. Respondent's speech did not amount to fighting words, words inciting imminent lawless action, or true threats. Black , 538 U.S. at 359, 123 S.Ct. 1536 ; Beauharnais , 343 U.S. at 256, 266, 72 S.Ct. 725. It was not enough to show that respondent's words amounted to harassment or obnoxiousness. Saxe , 240 F.3d at 204. Therefore, the only possible category remaining to the trial court that would not be considered constitutionally protected speech was defamation. See Beauharnais , 343 U.S. at 256, 266, 72 S.Ct. 725. The trial court's failure to assess whether respondent's statements were true or false, or to accept evidence on the *244 issue, renders review of that issue impossible. For that reason, respondent cannot be said to have defamed petitioner, nor is there anything in the record to support a finding that MCL 750.41 Is was violated. MCL 750.411s(6). Absent a violation of MCL 750.411s, there were no grounds on which to enter the PPO. MCL 600.2950a. Consequently, the trial court's decision to the contrary was an error of law and, therefore, an abuse of discretion. See *911 Kostadinovski , 321 Mich. App. at 743, 909 N.W.2d 907.
Because we conclude "that the trial court should never have issued the PPO, respondent [is] entitled to have LEIN[4 ] reflect that fact." T.M., 501 Mich. at 319, 916 N.W.2d 473.
III. PRIOR RESTRAINT ON SPEECH
Respondent also argues that the trial court abused its discretion by issuing the PPO because it was an unconstitutional prior restraint on his speech. We agree.
A. STANDARD OF REVIEW AND APPLICABLE LAW
Constitutional issues, as questions of law, are reviewed de novo. Winkler , 500 Mich. at 333, 901 N.W.2d 566. "We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order." Hayford, 279 Mich. App. at 325, 760 N.W.2d 503. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions-i.e., court orders that actually forbid speech activities-are classic examples of prior restraints."
*245 Alexander v. United States , 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (quotation marks and citation omitted). Such restrictions are distinguishable from punishment arising from past speech that has been adjudicated as criminal. Id. at 550-551, 113 S.Ct. 2766. Because injunctions "carry greater risks of censorship and discriminatory application than do general ordinances," they "require a somewhat more stringent application of general First Amendment principles." Madsen v. Women's Health Center, Inc., 512 U.S. 753, 764-765, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). Any prior restraint of expression bears "a heavy presumption against its constitutional validity." Bantam Books, Inc. v. Sullivan , 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).
B. ANALYSIS
The PPO in this case was an unconstitutional prior restraint on respondent's freedom of speech. Whether and under what circumstances a court in Michigan is permitted to enjoin defamation has not been considered by this Court in a published decision since 1966, in McFadden v. Detroit Bar Ass'n , 4 Mich. App. 554, 145 N.W.2d 285 (1966).[5] In that case, a panel of this Court held that "it is a familiar and well-settled rule of American jurisprudence that equity will not enjoin a defamation, absent a showing of economic injury ...." Id. at 558, 145 N.W.2d 285. The McFadden Court stated that the primary reason for refusing to do so was "an abhorrence of previous restraints on freedom of speech," but acknowledged other reasons, including that there is "an adequate remedy at law, i.e., an action for damages, and that the defendant in a defamation action *246 has the right to a jury trial which would be precluded by granting of an injunction." Id.
Contrary to McFadden , there is a modern trend toward allowing injunctions of defamatory speech. That modern trend, though, first requires a determination by a fact-finder that the statements were definitively false and then specifically limits any *912 injunction to the adjudicated speech.[6] As discussed, the trial court failed to make such a determination in this case. Therefore, regardless of whether the modern trend or the rule announced in McFadden , 4 Mich. App. at 558, 145 N.W.2d 285, is adopted, the issuance of the PPO here, because of the trial court's failure to determine that the speech actually was false, fails to overcome the "heavy presumption against its constitutional validity." Bantam Books , 372 U.S. at 70, 83 S.Ct. 631.
In sum, because the trial court never determined what statements by respondent, if any, actually were false, there simply were no constitutionally permissible grounds, even considering the modern trend, on which to issue the PPO. See id. .
*247 IV. CONCLUSION
We reverse the trial court order, vacate the PPO, and remand with instruction that the "PPO should be updated in LEIN as rescinded ...." T.M. , 501 Mich. at 320, 916 N.W.2d 473. We do not retain jurisdiction.
Fort Hood and Servitto, JJ., concurred with Riordan, P.J.

Although this case was initially captioned using the parties' names, on remand we have chosen to use the parties' initials in conformity with the Supreme Court's case caption. See TM v. MZ , 501 Mich. 312, 314 n. 1, 916 N.W.2d 473 (2018).

Although ultimately irrelevant, considering that respondent also specifically accused petitioner and her family of committing a crime, which was provable as false, we question whether respondent's statements regarding petitioner's parenting were capable of defamatory meaning. See Ireland v. Edwards, 230 Mich. App. 607, 620, 584 N.W.2d 632 (1998) (stating that the questions "whether someone is a fit mother, or whether someone is abysmally ignorant, can only be answered subjectively"). Because defendant's statements regarding plaintiff's fitness as a mother are statements of opinion, they are not actionable.

Because the trial court failed to make the inquiry into falsity, the PPO must be vacated. Therefore, it would be unnecessary to consider whether, pursuant to Const. 1963, art. 1, § 19, the trial court is permitted to make such a determination when deciding whether to grant a PPO. That constitutional provision provides that "[i]n all prosecutions for libels the truth may be given in evidence to the jury ...." Id. This Court and the Michigan Supreme Court previously have indicated that Const. 1963, art. 1, § 19, could apply in civil cases. See Howe v. Detroit Free Press, Inc., 440 Mich. 203, 225, 487 N.W.2d 374 (1992) (holding that the defendant's "constitutional right is implicated" in the civil case for libel); see also Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc. , 197 Mich. App. 48, 56, 495 N.W.2d 392 (1992) (citing Const. 1963, art. 1, § 9, for the "basic principle of libel law that truth is a defense to an action for defamation"). Whether the constitutional provision at issue would apply in a PPO case is a determination for another day.

LEIN stands for the Law Enforcement Information Network.

This case is not binding because it was decided before November 1, 1990. MCR 7.215(J)(1).

Numerous courts, both federal and state, have held that a trial court may enjoin a defendant from making defamatory speech after there has been a determination that the speech was, in fact, false. See Hill v. Petrotech Resources Corp. , 325 S.W.3d 302, 308-309 (Ky. 2010) ; San Antonio Community Hosp. v. Southern California Dist. Council of Carpenters , 125 F.3d 1230, 1239 (C.A.9 1997) ; Lothschuetz v. Carpenter , 898 F.2d 1200, 1208-1209 (C.A.6 1990) (Wellford, J., concurring in part and dissenting in part); id . at 1209 (Hull, J., concurring in part and dissenting in part); Balboa Island Village Inn, Inc. v. Lemen , 40 Cal. 4th 1141, 1155-1156, 57 Cal.Rptr.3d 320, 156 P.3d 339 (2007) ; Retail Credit Co. v. Russell , 234 Ga. 765, 777-779, 218 S.E.2d 54 (1975) ; Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc., 352 N.W.2d 1, 11 (Minn. 1984) ; Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan , 251 Neb. 722, 732, 559 N.W.2d 740 (1997) ; Organovo Holdings, Inc. v. Dimitrov , 162 A.3d 102, 123-126 (Del. Ch. 2017). Cf. Kinney v. Barnes , 443 S.W.3d 87, 94-99 (Tex. 2014).