*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

FOR PUBLICATION
February 17, 2022

v

No. 353825
Ontonagon Circuit Court
LC No. 2019-000043-FH

ROBERT ARTHUR JOHNSON, JR,

        Defendant-Appellant.

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. (*concurring*)

I concur in the outcome reached by the majority, but I respectfully conclude that defendant is entitled to a new trial for different reasons.

## I. BACKGROUND

As the majority discussed, BP was a witness in a proceeding against defendant. Shortly after defendant was released from incarceration, he sent the following message to BP:

> Hey there you lying pc of sht, I hope yr proud of yourself. Your fkn lies cost me a year in jail, as the video clearly shows u weren't walking to clinic, werent charged by a dog, nor ran as fast as u could into clinic, cuz u were afraid the dog would bite u. U must have been coached by the cops, and were coherced into lying for then. U dont know the difference bwtween right and wrong, and based on ur writing skills, you MUST be fkn retarded. Goes around comes around, and Karma WILL fuck you, for the lies u told, and the harm you caused me from ur choice to lie. You should be ashamed of yourself, and I hope u suffer an extremely horrible death that causes u and ur family dire pain, like YOU put upon me, and consequences for being a lying little twerp who deserves to have his fkn tongue cut off, cuz if thats the BEST you can do with it, YOU DON'T NEED IT. Fk u and ur family, eat shit and die u lying pc of shit, middle finger high in the air to you, and when ur 18, Id love to show u how much I and my family appreciates your fkn lies. Fuck you

-1-

Defendant was charged with witness retaliation, the definition of which I will discuss further below. Defendant never disputed sending the above message or that BP had been a witness against defendant at the prior trial. Rather, his theory of the case, as expressed in his opening statement to the jury, was that the message was admittedly offensive, but it contained only expressions of hope that something bad would happen to BP and no actual threats to kill or threats to injure. During closing argument, defendant conceded that BP had been frightened by the message, but defendant argued that BP's feelings were irrelevant and that nowhere in the message did defendant affirmatively state that he would do anything to BP.

In relevant part, the trial court instructed the jury as follows:

The defendant is charged with the crime of witness retaliation. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that [BP] was a witness at an official proceeding . . . Second, that the defendant retaliated, attempted to retaliate, or threatened to retaliate against [BP] for having been a witness. Retaliate means to commit or attempt to commit a crime against the witness or to threaten to kill or injure any person, or to threaten to cause property damage to the witness. The defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence.

As the majority states, the above instructions were a verbatim recitation of M Crim JI 37.6, appended by M Crim JI 4.16. Half an hour after the jury began deliberations, it sent a message, and the trial court made the following statement on the record:

Thank you. Please be seated. Ladies and gentlemen of the jury, the court has received a question from the bailiff. The question reads as follows,

"Does psychological injury count as injury under the law?"

And in quotes,

"Threaten to kill or injure."

Close quotes.

The answer is, yes. Injury means bodily injury, disfigurement, chronic pain, or mental anguish.

I will now excuse you to continue your deliberations.

The transcript indicates that all parties were present at the time, although the record does indicate that the trial court consulted with counsel before addressing the jury's question. However, the trial court did ask the attorneys after the jury resumed its deliberations whether they had "anything for the record," and both parties declined. A few hours later, the jury indicated that it had reached an impasse, and with the consent of both attorneys, the trial court read the deadlocked jury instruction. The jury returned with its verdict of guilty approximately half an hour later. The jury was polled, and each juror affirmed that their verdict was guilty.

## II.  APPLICABLE STATUTORY LAW

Defendant was charged with witness retaliation pursuant to MCL 750.122(8), which provides:

> A person who retaliates, attempts to retaliate, or threatens to retaliate against another person for having been a witness in an official proceeding is guilty of a felony . . .  As used in this subsection, "retaliate" means to do any of the following:
>
> (a)    Commit or attempt to commit a crime against any person.
>
> (b)    Threaten to kill or injure any person or threaten to cause property damage.

Pursuant to MCL 750.5, " 'Crime' means an act or omission forbidden by law which is not designated as a civil infraction" and may be punishable by imprisonment, a non-civil fine, removal from office, various kinds of disqualification, or "other penal discipline."  Nowhere in the statute is "injure" or "threaten" defined.  However, MCL 750.2 provides that the "rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof," but rather the provisions of the Michigan Penal Code "shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law."

## III.  CONSTITUTIONALITY OF JURY INSTRUCTIONS

I entirely agree with, and will not repeat, the majority's discussion in Section II.B to the extent the majority concludes that a "threat" under MCL 750.122(8)(b) must mean a "true threat" as described in *Virginia v Black*, 538 US 343, 358-360; 123 S Ct 1536; 155 L Ed 2d 535 (2003); see also *People v Byczek*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350341), slip op at 6; *People v Gerhard*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354369), slip op at 3; *TM v MZ*, 326 Mich App 227, 239; 926 NW2d 900 (2018).  I do not agree that the jury instructions, as written or as given, are therefore constitutionally infirm.

It is well established that jury instructions must be reviewed as a whole and in context. *People v Kelly*, 423 Mich 261, 270-271; 378 NW2d 365 (1985); see also *People v Traver*, 502 Mich 23, 40; 917 NW2d 260 (2018).  *Black* defined a "true threat" as a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," irrespective of whether the speaker "actually intend[ed] to carry out the threat."  *Black*, 538 US at 344, 359-360.  The plain language of both the statute and M Crim JI 37.6 clearly restrict the class of threats that constitute a violation of the statute: threats to kill, threats to injure, or threats to cause property damage.  All three of these possibilities obviously constitute "acts of unlawful violence."  *Black*, 538 US at 344, 359. Whether a particular communication included a "serious expression of intent" seeks to distinguish hyperbole and invective from speech calculated to place someone in fear of violence.  See *Id*. at 359-360.  The trial court's instruction regarding the determination of defendant's intent, in light of the extensive argument that defendant only intended to express hope that BP would suffer a dire fate, clearly communicated to the jury that it must determine whether defendant intended to promise harm upon BP or merely engage in crass invective.  There is no contention that defendant sent the message by accident.

When the jury instructions are reviewed as a whole and in light of the entire proceedings, they clearly informed the jury—in substance, even if not in exactly so many words—that it must find the requisite intent to convey a "true threat." I respectfully do not agree with the majority that M Crim JI 37.6, at least as augmented by M Crim JI 4.16, is constitutionally infirm. I agree entirely with the majority's discussion in Section II.C that the evidence was sufficient to establish beyond a reasonable doubt that defendant violated MCL 750.122(8).

## IV. TRIAL COURT RESPONSE TO JURY QUESTION

I nevertheless concur that defendant must be given a new trial. Like the majority, I find the jury's question regarding psychological injury confusing. It is possible, as the majority surmises, that the jurors believed it was relevant whether BP actually suffered harm as a consequence of defendant's threats. It is also possible, from the way the note was phrased by the trial court,[1] that the jury mis-parsed its instructions and believed that "threaten to kill" was distinct from "injure," and thus actual injury[2] was required if there had been no threat to kill or threat to cause property damage. There may be other possibilities, at which we could only guess. The trial court erred in part by failing to discuss the question with counsel, and it also erred by failing to recognize that the jury's question simply made no legal sense.

As discussed, it was legally irrelevant whether BP suffered any actual injury. Indeed, it was legally irrelevant whether defendant genuinely intended to cause BP any actual injury.

---

[1] Insofar as I can determine, no copy of the jury's note was included in the record.

[2] I conclude that it is a "red herring" whether "injury," as used in MCL 750.122(8)(b), may include psychological injury. However, because the majority chooses to address the issue, I respectfully disagree that the plain language of the statute necessarily compels the conclusion that it is restricted to physical injuries only. Although MCL 750.122 does not define "injure," elsewhere the Legislature has explicitly clarified whether an injury must be physical. For example, MCL 750.411s(8)(e), regarding posting a message through an electronic medium, defines "credible threat" as "a threat to kill another individual or a threat to inflict *physical* injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual" (emphasis added). I also note that governments may impose some content-based restrictions on speech if the goal is to avoid a "secondary effect," so long as the restriction is necessary to serve a compelling interest and there is no content-neutral way to achieve the same result. *RAV v City of St Paul, Minn*, 505 US 377, 389- 390, 394- 396; 112 S Ct 2538; 120 L Ed 2d 305 (1992). The goal of protecting the sanctity of the entire justice system by protecting witnesses is certainly compelling; and injuries to, say, a person's reputation or mental state can be as harmful and effective at intimidation as injuries to a person's body. I am therefore not persuaded that "injury" as used in MCL 750.122(8)(b) *plainly and unambiguously* must be restricted to physical injuries. Furthermore, pursuant to MCL 750.2, the "rule of lenity" is inapplicable to statutes found within the Michigan Penal Code, MCL 750.1 *et seq.* See *People v Morris*, 450 Mich 316, 327; 537 NW2d 842 (1995). I would exercise judicial restraint and refrain from making a pronouncement about a definition that is not germane to the case before us.

Importantly, defendant's message included numerous statements that implicitly or explicitly threatened physical injury to BP, but nothing that seemingly suggests threatened psychological injury. There was, however, ample testimony that BP did in fact sustain psychological injuries. The jury's question should have alerted the trial court and the parties that the jury misapprehended that the touchstone of witness retaliation is the *threat issued*, not the harm sustained. The trial court's response, however, compounded that confusion instead of clarifying it. As discussed, there was more than ample evidence to find defendant guilty of witness retaliation for issuing a "true threat" to BP. Nevertheless, I agree with the majority that the trial court's response to the jury's question created an unacceptable danger that the jury instead convicted defendant on the impermissible basis of BP suffering actual injury, of whatever kind.[3]

In summary, I find nothing improper or unconstitutional about the jury instructions—either as they were given before the jury began deliberations, or as they are written. Rather, I find that the trial court's improper response to the jury's question caused the jury to be, on the whole, improperly instructed. On that more limited basis, I concur with the majority's conclusion that defendant must receive a new trial.

/s/ Amy Ronayne Krause

---

[3] Again, psychological injury is a "red herring" in this appeal.