*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DMT.

---

JDT,

Petitioner-Appellee,

v

DMT,

Respondent-Appellant.

UNPUBLISHED
February 19, 2025
9:08 AM

No. 367794
Allegan Circuit Court
LC No. 2020-062377-PP

---

Before: GADOLA, C.J., and CAMERON and ACKERMAN, JJ.

PER CURIAM.

Respondent appeals by leave granted[1] two orders entered by the trial court: one finding him guilty of a probation violation and the other sentencing him to five days' imprisonment and extending his probation for an additional six months. Because the probation violation was predicated on respondent's constitutionally protected speech, we reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

Respondent was placed on probation pursuant to MCL 600.1715(1) after pleading no contest to two violations of a personal protection order ("PPO") that prohibited him from contacting petitioner, his ex-wife. As a condition of his probation, respondent was barred from engaging in "any assaultive, abusive, threatening, or intimidating behavior."

The instant probation violation stemmed from a series of e-mails respondent sent over the course of a month to attorney Wayne Crowe, who represented respondent in his divorce

---

[1] *In re DMT*, unpublished order of the Court of Appeals, entered April 2, 2024 (Docket No. 367794).

proceedings and the PPO proceeding.[2]  In the initial e-mails, which were sent only to Crowe, respondent referred to him as a "pussy" and a "negligent piece of shit," accused Crowe of "ignor[ing] child abuse" and owing respondent money, and stated, "Fuck you."  In respondent's subsequent e-mails, he copied various other people, including the county prosecutor, and referred to Crowe as a "fraud" and a "twat," accused Crowe of breaking the law, and accused the presiding judge of ignoring evidence of child abuse and parental alienation.  Some of the e-mails included photos, such as a photo of the presiding judge and his family at a judicial investiture and another of respondent's children, edited to appear as though they were in a jail cell.  Crowe reported the e-mails to respondent's probation officer, who filed a warrant request alleging a technical probation violation for respondent's "threatening/intimidating behavior" toward Crowe.

At the probation violation hearing, Crowe testified that the e-mails made him fear for his safety.  He also testified about several telephone calls in which respondent allegedly threatened him, although he could not recall the substance of those threats.  After the presentation of evidence, respondent argued that the e-mails were constitutionally protected speech.  The trial court disagreed, finding that respondent intended to threaten and intimidate Crowe, the e-mails caused Crowe to feel threatened and intimidated, and respondent's speech was not protected under the First Amendment because the language in his e-mails constituted fighting words.  The trial court found respondent guilty of the probation violation and imposed the sentence described above.  Respondent now appeals.

## II. ANALYSIS

On appeal, respondent contends that the trial court violated his First Amendment rights by finding him guilty of a probation violation based on constitutionally protected speech.  We review a sentencing court's determination regarding a probation violation for an abuse of discretion.  *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009).  A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or is premised on an error of law.  *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369679); slip op at 2.  We review constitutional questions de novo.  *TM v MZ (On Remand)*, 326 Mich App 227, 236; 926 NW2d 900 (2018).

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.' "  *Virginia v Black*, 538 US 343, 358; 123 S Ct 1536; 155 L Ed 2d 535 (2003), quoting US Const, Am I.  "Protected speech under the First Amendment includes expressions or ideas that the overwhelming majority of people might find distasteful or discomforting."  *People v Johnson*, 340 Mich App 531, 542; 986 NW2d 672 (2022) (quotation marks and citation omitted).  These protections apply equally to speech over the Internet.  *TM*, 326 Mich App at 237.  "However, the right to speak freely is not absolute."  *Id*. (quotation marks and citation omitted).  States may restrict certain categories of speech that "by their very utterance inflict injury or tend to incite an immediate breach of the

---

[2] According to respondent, the attorney-client relationship ended after Crowe resigned from his law firm without notifying respondent or moving to withdraw as respondent's counsel.

peace," such as "fighting words" and "true threats." *TT v KL*, 334 Mich App 413, 443; 965 NW2d 101 (2020) (quotation marks and citation omitted).

## A. TRUE THREATS

The trial court erred in concluding that respondent's speech was not protected by the First Amendment because it was threatening in nature. The right to free speech does not extend to "true threats," which are defined as statements in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *People v Burkman*, 513 Mich 300, 328-329; 15 NW3d 216 (2024), quoting *Black*, 538 US at 359. "Excluded from this category are jests, hyperbole, or other statements whose context indicates no real possibility that violence will follow." *Burkman*, 513 Mich at 329. To establish a true threat, "[t]he State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman v Colorado*, 600 US 66, 69; 143 S Ct 2106; 216 L Ed 2d 775 (2023). The true-threat exception to the First Amendment encompasses only physical threats, and our Supreme Court explicitly declined to extend the exception to encompass nonphysical threats. *Burkman*, 513 Mich at 331.

Here, the trial court failed to conduct a true-threat analysis, instead focusing on Crowe's subjective feelings of intimidation. In support of its finding that respondent's speech was threatening and, thus, not constitutionally protected, the trial court referenced specific e-mails, including:

> one sent on November 29th at 9:40 to Mr. Crowe, where [respondent] says, "You're a negligent piece of shit. You ignore child abuse and you owe me money."

> * * *

> Another e[-]mail . . . sent to numerous people, including Mr. Crowe, on December 22nd, but he specifically addresses Mr. Crowe by saying, "Fuck you, Wayne. You owe me a house. Your behavior is far more inappropriate than mine. You broke the law." And use of[,] "Fuck you, Wayne," together with, "You're a negligent piece of shit," and then the final e[-]mail specifically addressed to Mr. Crowe on November 24th of 2022 at 10:35 a.m., with the subject line of, "You're a pussy[,]" and the direct communication of[,] "Fuck you." These are the specific terms that the Court feels are intimidating and threatening in nature when provided in context with the other e[-]mails that have been admitted and together with Mr. Crowe's testimony regarding his conversations with [respondent] while he represented [respondent] that were threatening and inappropriate in nature.

The trial court instead should have assessed whether respondent intended "to communicate a serious expression of an intent to commit an act of unlawful violence" against Crowe or whether the purported threats were physical. *Id.* at 329, quoting *Black*, 538 US at 359. The record would not have supported such a finding. Although respondent's e-mails were offensive and inappropriate, they did not express an intent to commit an act of unlawful physical violence. Accordingly, respondent's speech did not fall within the true-threat exception to the First Amendment.

## B.  FIGHTING WORDS

The trial court also erred in finding that respondent's e-mails constituted "fighting words." Fighting words are "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction . . . ." *TM*, 326 Mich App at 238 (quotation marks and citation omitted).  Speech made over the Internet, "far removed from any potential violence," is not "inherently likely to provoke a violent reaction." *Id*. at 239.

The trial court reasoned that,

> [i]f [respondent] were to approach Mr. Crowe and say, "Fuck you.  You're a pussy," and the other threatening things that he said, I think it's very likely that would provoke a violent reaction.  The fact that [respondent] hides behind a computer to make these threats and fighting words doesn't excuse them or make them any different.

We disagree.  Although respondent's language might provoke violence if delivered in person, the fact that it was communicated via e-mail—"far removed from any potential violence"—renders it unlikely to provoke a violent reaction. *Id.*  Here, the medium of communication is a critical factor in determining whether the speech constitutes fighting words, and the trial court erred by disregarding it.

## C.  INSULTS, EPITHETS, AND PERSONAL ABUSE

Finally, the prosecution contends that respondent's speech—which consisted of insults, epithets, and personal abuse—was not protected because it lacked expressive purpose and was meant solely to cause harm.  That argument is unpersuasive.  The record contains no evidence that respondent's speech inflicted harm on Crowe "by [its] very utterance." *TT*, 334 Mich App at 443. Additionally, respondent's e-mails repeatedly expressed grievances, including allegations that Crowe ignored child abuse and owed him money.  Those statements demonstrate an expressive purpose beyond mere harassment.  Speech with expressive content, even if offensive, does not fall within the narrow categories of historically unprotected speech. *Counterman*, 600 US at 73-74. Accordingly, respondent's speech is protected under the First Amendment.

## III.  CONCLUSION

Because respondent's speech does not fall within any exception to the First Amendment, it was constitutionally protected.  The trial court abused its discretion in finding respondent guilty of a probation violation based on constitutionally protected speech.

Accordingly, we reverse the trial court's orders and remand for entry of an order consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Matthew S. Ackerman

-4-