*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DEF.

UNPUBLISHED
April 24, 2026
9:39 AM

No. 374409
Kalamazoo Circuit Court
LC No. 2024-008677-PP

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order finding him in criminal contempt for violating a personal protection order (PPO) which the trial court granted to petitioner. The trial court sentenced respondent to 93 days in jail. Concluding that the trial court was correct in its determination and that the conduct respondent engaged in was in no way protected speech or activity under the First Amendment, US Const, Am I, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves respondent's conviction of criminal contempt for violating a PPO. In April 2024, petitioner requested an ex parte PPO prohibiting respondent from stalking her under MCL 750.411h. The parties were in a relationship for five years and had a child together. Petitioner alleged respondent assaulted her during their relationship, destroyed her property, and threatened her and her family on Facebook.[1] The trial court granted an ex parte PPO, prohibiting respondent from stalking petitioner and "[p]osting anything about the Petitioner on social media[.]"

On August 7, 2024, the trial court ordered respondent, on petitioner's motion, to show cause why he should not be held in contempt for violating the PPO. Petitioner attached a Facebook post in which respondent stated: "I got super powers and no matter your size, you can be 230 pounds . . . I'm on yo [sic] ass and in yo [sic] ass like Diddy did Meek . . . have you screaming

---

[1] Petitioner said the threatening posts began after a child support hearing.

for help!"[2]  Petitioner interpreted this post to be referring to anal sex and threatening family members who asked respondent to delete his posts.  Petitioner also said the post "impacted me because [respondent] has had me in those positions before where I have been screaming for help . . . ."

The trial court issued a second order to show cause on August 28, 2024.  Petitioner attached a Facebook post in which respondent claimed he strangled petitioner's cousin and stated: "I tried to warn yall [sic] to stop playing!"  In another post, respondent stated: "I'm coming at everybody like a freight train[.]  Innocent bystanders get hit[.]"  Petitioner said the reference to a freight train made her feel respondent "was out to get me and my family."  Respondent also stated: "Everybody else get the hit stick we don't GAF!  So yeah this what it look like [sic] when you play with me[.]  I don't know how to stop."  Petitioner stated, after these posts, she only left her house to go to work or church.[3]

Respondent moved to dismiss all pending PPO violations.  He argued the condition prohibiting him from posting anything about petitioner unconstitutionally restricted his free speech and requested the trial court remove this condition from the PPO.[4]  Respondent asserted the content of his Facebook posts was protected speech.

The trial court conducted a hearing and took evidence in open court on November 13, 2024.  The hearing continued on December 18, 2024, to allow time for additional proofs—which ultimately were not presented—closing arguments, and the trial court's comprehensive 15-page opinion on findings and sentence.  The court determined respondent's posts harassed petitioner.  It found respondent's post referencing how "Diddy did Meek[]" and how petitioner was "screaming for help" was a threat of violence.  In the trial court's view, respondent's posts were "intentional acts designed to harass, threaten, intimidate, and make threats of harm," which were "true threats" based on respondent's history of abusing petitioner.  The trial court ruled respondent stalked petitioner and violated the PPO beyond a reasonable doubt.  The trial court sentenced respondent to 93 days in jail, with 6 days in jail time credit.  Respondent now appeals.

## II.  PPO VIOLATION—FREEDOM OF SPEECH

On appeal, respondent argues his criminal-contempt conviction violated his free-speech rights under the United States and Michigan Constitutions, US Const, Am I; Const 1963, art 1,

---

[2] On appeal, respondent does not challenge the authenticity of any Facebook posts in the lower court record.

[3] Petitioner filed four additional motions to show cause.  She attached respondent's Facebook posts which, according to petitioner, claimed she told her cousin to fight respondent and engaged in a sexual relationship with respondent's father.  Petitioner asserted these posts were false and defamatory and damaged her business opportunities and familial relationships.

[4] The trial court ruled respondent's request to modify the PPO was untimely, since it was not filed within 14 days after service of the PPO.  See MCL 600.2950a(13).

§ 5, because the social media posts, which were the basis of his conviction, were protected speech. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to hold a party . . . in contempt." *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 665; 997 NW2d 511 (2022) (quotation marks and citation omitted). Under the abuse-of-discretion standard, this Court defers to the trial court if the trial court selected a "reasonable and principled outcome . . . ." *Id*. at 665-666 (quotation marks and citation omitted). "A trial court's findings in a contempt proceeding are reviewed for clear error[,]" which "exists when this Court is left with the definite and firm conviction that a mistake was made." *In re Contempt of Henry*, 282 Mich App 656, 668-669; 765 NW2d 44 (2009) (citations omitted). This Court reviews issues of constitutional interpretation de novo. *In re KJL*, 342 Mich App 283, 293-294; 995 NW2d 361 (2022).

## B. DISCUSSION

Respondent's criminal-contempt conviction did not violate his free-speech rights, because his harassment of petitioner on social media was not protected speech.

"Under MCL 600.2950a(23), a person who fails to comply with a PPO is subject to the criminal-contempt powers of the court." *In re JCB*, 336 Mich App 736, 747; 971 NW2d 705 (2021). A petitioner must demonstrate a respondent is guilty of criminal contempt beyond a reasonable doubt. *Id*. On appeal, respondent does not challenge the trial court's grant of a PPO to petitioner. Likewise, he does not dispute, if his social media posts were not protected speech, those posts were sufficient to find he violated the PPO.

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that Congress shall make no law . . . abridging the freedom of speech." *TM v MZ*, 326 Mich App 227, 237; 926 NW2d 900 (2018) (quotation marks and citation omitted; alteration in original). The Michigan Constitution states: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech . . . ." Const 1963, art 1, § 5. Although speech over the Internet is protected to the same extent as other speech, "the right to speak freely is not absolute." *TM*, 326 Mich App at 237 (quotation marks and citations omitted). "[S]peech on public issues . . . is entitled to special protection[,]" but "where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Buchanan v Crisler*, 323 Mich App 163, 190; 922 NW2d 886 (2018) (quotation marks and citations omitted).

The trial court ruled respondent violated the PPO, because his Facebook posts constituted stalking and harassment of petitioner. Under MCL 750.411h(1)(e), " '[s]talking' means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel . . . and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." The statute defines " '[h]arassment' " as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(d).

In this matter, petitioner did not consent to respondent's posts referencing her and her family members. Respondent's posts caused petitioner to suffer anxiety and depression and be afraid to leave her house. MCL 750.411h(1)(d), however, excludes "constitutionally protected activity" from the definition of harassment. Respondent argues that even if respondent's posts were unconsented conduct which caused petitioner emotional distress, the posts were protected speech because, according to respondent, he was engaged in "constitutionally protected activity".

Respondent argues his posts were protected speech under the First Amendment, US Const, Am I, because he did not directly contact petitioner or incite any illegal conduct. This argument lacks merit. A state may punish true threats of violence when "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *TM*, 326 Mich App at 239 (quotation marks and citation omitted). "[J]ests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow" are not true threats. *Counterman v Colorado*, 600 US 66, 74; 143 S Ct 2106; 216 L Ed 2d 775 (2023) (quotation marks and citation omitted). To prosecute a true threat, a state must also show "the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69.

Respondent argues his posts are similar to other types of speech which offended the recipient but were nonetheless protected under the First Amendment. First, the United States Supreme Court vacated an injunction prohibiting a community organization from distributing pamphlets which criticized the respondent's real estate practices. *Organization for a Better Austin v Keefe*, 402 US 415, 417, 420; 91 S Ct 1575; 29 L Ed 2d 1 (1971). Although the organization urged people to call the respondent at his home, the pamphlets were a form of protected speech intended to educate the public. *Id*. at 419. Second, the respondent in *TM*, 326 Mich App at 230-233, posted "highly inflammatory" online comments accusing the petitioner of criminal activity. This Court held the comments were not true threats, because the respondent did not incite an unlawful act of violence. *Id*. at 239. The respondent stated "someone should [g]o look at [the] petitioner's address" but did not urge anyone to break into the petitioner's house or trespass on her property. *Id*. (quotation marks omitted; alteration in original).

Both cases respondent cites are inapplicable to this matter. Unlike *Organization for a Better Austin*, which involved advocacy on a matter of public concern, respondent's posts concerned a purely private dispute. Speech on purely private matters is entitled to less First Amendment protection than speech on public issues. *Buchanan*, 323 Mich App at 190 (citations omitted). Unlike both cases, respondent's posts went further than just mentioning or harassing petitioner. The trial court correctly ruled respondent, when reading his posts in context, threatened physical and sexual assault against petitioner. Respondent stated he would be "in you [sic] ass" and "have you screaming for help[.]" Respondent claimed he strangled petitioner's cousin, then said he "tried to warn yall [sic] to stop playing!" Respondent also stated: "I'm coming at everybody like a freight train[.] Innocent bystanders get hit[.]" Respondent notes he did not name or tag petitioner, but the PPO prohibited "[p]osting anything about the Petitioner on social media[,]" not referencing petitioner by name. The trial court found respondent's statements were true threats which expressed an intent to commit unlawful violence, in light of his history of physical abuse. The court stated at the December 18, 2024 hearing, *inter alia*:

-4-

The allegations, and the testimony, and the attachments to each of the show causes show time and time again that [respondent] has threatened to physically injure by his statements on social media that anyone could read that he's very, very active on.  That [respondent] was trying to frighten and harass—[respondent] was trying to frighten or harance—harass [petitioner].

* * *

So everything has, beyond a reasonable doubt provided information, mostly through [respondent] and his actions that lead this Court to determine that he's guilty of violating this personal protection—protection order that I issued on many occasions.

* * *

I will just state that this is not an ex parte PPO. If anything, [respondent] has time and time again created a situation for himself, on his own as an adult, that violates all of the terms of the personal protection order by way of his communication and threats of harm, with a past history of being physically assaultive towards the petitioner during their relationship, as she testified to, and his continuous flaunting of the judicial system, the in carceral system, etcetera. Being in jail and I will still do what I want to do and IDAGAF.

The findings of the court were not clear error.  To the contrary, they were correct and well supported by the evidence of record and the law.  The trial court did not err by ruling respondent's posts were not protected speech.

## III.  CONCLUSION

For the reasons discussed above, we affirm.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

-5-