*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JCM, Minor.

UNPUBLISHED
March 19, 2025
3:48 PM

No. 368224
Berrien Circuit Court
Family Division
LC No. 2013-000407-GM

## AFTER REMAND

Before: YATES, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order denying termination of petitioners' guardianship of JM, a minor child. This Court previously remanded this case for the probate court to "articulate its findings on the best-interest factors on the record, taking into account up-to-date information." See *In re JCM Minor*, unpublished opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 368224); *In re JCM Minor*, unpublished order of the Court of Appeals, entered May 30, 2024 (Docket No. 368224). Respondent's appeal is again before this Court. We again remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts underlying the first appeal were set forth in our previous opinion:

In 2013, Children's Protective Services (CPS) removed JM from respondent's care and placed her in the care of petitioners, JM's grandparents. The removal was based on respondent's prostitution and abuse of illegal drugs. In September 2013, the trial court granted petitioners' petition for guardianship of JM. Respondent had no contact with JM for the next two years and, although she eventually became sober, she admitted to abusing methamphetamine during this time.

JM was diagnosed with several mental-health issues and emotional impairments. She was suspended during preschool and kindergarten because of her

inappropriate behaviors toward teachers and students, which included biting and hitting. Consequently, she participated in special education services as a supplement to her regular learning environment, and in speech and social services. Respondent was not involved in the meetings regarding JM's progress and needs. Respondent testified at the hearing on her petition that petitioners did not communicate any information to her regarding these meetings. She also said that petitioners refused to sign a release of information so that she could communicate with JM's teachers or the school social worker. And she said that petitioners failed to inform the school and medical authorities of her existence, which further prevented her from obtaining information on the child's school or medical treatments.

In March 2015, respondent moved to modify the guardianship and sought a reunification plan that would include unsupervised parenting time. Respondent informed the trial court of her sobriety and that she had obtained independent housing and government benefits, and was currently caring for her one-year-old daughter. The trial court issued an order that modified the guardianship and established a supervised parenting plan. The parenting plan visits occurred in respondent's home two Saturdays and one Friday every month, but they did not include any overnight visits.

In June 2019, respondent moved to terminate the guardianship. The trial court ordered the Department of Health and Human Services (DHHS) to prepare an investigative report, and it ordered a psychological evaluation and parenting-time assessment of respondent and petitioners. In 2021, respondent moved for additional parenting time. The parties agreed to employ a counselor to provide reunification therapy for JM and respondent. The counselor recommended one overnight parenting-time session per month initially, with a gradual increase in parenting time over several months until JM was returned to respondent's care full-time. The parties attempted to resolve the parenting time issue through settlement conferences, but were unsuccessful.

In April 2023, the trial court denied respondent's petition to terminate the guardianship. Respondent moved for reconsideration, which the trial court denied. This appeal followed. [*JCM*, unpub op at 1-2 (footnote omitted).]

On appeal, respondent argued that the trial court imposed an improper evidentiary standard on her in analyzing her petition, and also erred in its best-interest analysis. *Id.* at 2. This Court held that the trial court had applied the proper evidentiary standard, *id.* at 3, but also concluded that "the trial court did not adequately articulate its best-interest findings on the record," *id.* at 5. Accordingly, we remanded the case "to allow the trial court to place on the record its findings regarding the relevant best-interest factors," taking into account up-to-date information when doing so. *Id.* at 6.

On remand, the trial court held a two-day hearing in which the parties were permitted to introduce up-to-date information concerning the guardianship and any events that had happened

after September 8, 2022—the close of proofs in the initial proceedings on respondent's petition to terminate the guardianship. After the hearing, the trial court issued a written opinion containing the trial court's findings under the relevant best-interest factors:

## II. SPECIFIC FINDINGS PURSUANT [SIC] MCL 700.5101(A)

(i)   *The love, affection, and other emotional ties existing between the parties involved and the child.*

The appointed Attorney GAL for JM reported to the court on JM's behalf the deep love and affection provided her by her guardians. JM's therapist confirmed the same adding it to be [sic] in a home structure that best meets JM's needs. Initially in June of 2023 with the court addressing competing motions for relief and a motion for involuntary dismissal having been filed, the court conducted an in camera proceeding to provide insight relative [sic] JM's reasonable preference. Following remand a subsequent in camera [sic] was scheduled and held on August 8, 2024, at the request of the Attorney/GAL on behalf of JM. The court noted an increase in JM's maturity in articulating her preference. Her stated position however never wavered in its' [sic] adamance at any point. JM was more forceful in communicating her stated preference. JM expressed a deep love and affection for her guardians and sense of security provided by them. She nevertheless expressed willingness to expand [sic] time engaging with and strengthening her relationship with Respondent.

(ii)   *The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.*

In this case an initial order of guardianship entered in September of 2013 following Children [sic] Protective Services (CPS) removal of JM, age 2, from respondent based on alleged prostitution and abuse of illegal drugs and respondents [sic] alleged disappearance. In March of 2015 self-represented respondent filed a petition to modify the guardianship seeking *'a reunification plan involving unsupervised parenting time'* and absent court hearings an order was submitted by attorney for the guardians incorporating the addition of a supervised/unsupervised parenting time/visitation provision which was entered by the court April 20, 2015.

The Attorney/GAL identifies the family situation as "complex and relationships between guardians and petitioner-mother [sic] strained." While guardians appear willing to communicate with the respondent mother, she is not receptive to direct communication with them. In-court observation of parties and their counsel affirm the same.

Sadly, at commencement of these proceedings and until very recently respondent had not exercised any overnight visitation since establishment

-3-

of the guardianship. Despite significant availability for engagement within therapeutic settings there is no evidence supportive of respondent's full recognition of JM's special needs, her emotional fragility or full recognition of how to accommodate those needs. Attorney/GAL concludes *"it cannot be overemphasized that JM has been able to overcome significant emotional and academic obstacles in large part due to the work of the guardians who solely have demonstrated beyond simply love and affection,* [sic] *effective guidance providing JM with feelings of safety and security".* [sic]

Evidence supports a finding that guardians demonstrated efforts to seek expansion of visitation/parenting time consistent with JM's capacity to self-regulate and emotionally engage and navigate. *The Court of Appeals noted that respondent had not had much experience dealing with JM's special needs and supporting her as a special needs child.

(iii)    *The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.*

The guardians for more than a decade have absent any contribution from respondent provided for the material and medical needs of JM. At age 2 the minor was diagnosed with a mental/emotional disorder manifesting significant special needs for which guardians have provided long-term counseling which has proven successful. Continuing supportive counseling services remain available. Above and beyond identified necessary provisions, guardians are encouraging and financially supporting her engagement in competitive cheer and other competitive athletic activities.

(iv)    *The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintain* [sic] *continuity.*

For a [sic] far back as JM can remember—essentially her lifetime, the definition of home has been with her guardian [sic]/grandparents. The exercise of Parenting time has just recently been explored and expanded— JM has lived in her home solely with her guardians/grandparents in a stable, satisfactory environment, which she desires to maintain.

(v)    *The permanence, as a family unit, of the existing or proposed custodial home.*

Grandparents have maintained structure [sic] of consistent and stable couple, reflecting permanence of the family unit.

(vi)    *The moral fitness of the parties involved.*

The initiation of the guardianship was a result of CPS removal of JM from her mother's care due to her prostitution and abuse of illegal drugs. It is her

'past' as relates to moral fitness. Respondent has, [sic] demonstrated progress and rehabilitation. There has been no reference or indication of moral concerns relative the [sic] guardians from the inception of the guardianship.

(vii) *The mental and physical health of the parties involved.*

The record supports findings of [sic] the Respondents [sic] history of mental illness and that she has worked diligently as a parent, to master any associated issues as reflected in the 2023 neuropsychological notes. The note reflects however, that she has not yet achieved capacity of providing JM with the maturity and relational stability that would be required. Additionally, the Attorney/GAL maintains concerns for caution from his interaction with respondent and her partner "who seem focused on their needs rather than on JM's needs and interests, expressing frustration with the court process and demonstrated [sic] verbal combativeness that was not appropriate for the situation". [sic] The guardian/grandparents though advanced in age perhaps themselves benefit from the rigors of remaining active and vibrant as they support JM fully in her participation in educational pursuits, competitive sports and nurturing her expanding 'teenage' life.

(vii) *The child's home, school, and community record.*

As contained herein JM's home, school and community records are exceptional. A true example of success. Despite emotional and academic challenges, JM has made good transition [sic], her first year of middle school, again fully integrated into regular classrooms.

(ix) *The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.*

JM has remained adamant in her position and desire for resolve [sic] of the matters pending before this court. With demonstrated maturity, now almost 2 years older—an equal demonstration of being more resolute in her thoughts and expressed desires.

(x) *The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.*

As previously indicated above guardians are open to cooperation and joint efforts toward best interest for JM.

(xi) *Domestic violence regardless of whether the violence is directed against or witnessed by the child.*

N/A per either party.

> *(xii)    Any other factor considered by the court to be relevant in a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.*
>
> The court did appropriately accept and enter a submitted uncontested proposed order in 2015 which referenced reunification for a motion limited in its' [sic] request for relief in modification of the order resolving the parties [sic] contested matter. And with hope of providing platform [sic] from which parties could develop better capacity for working together. It erroneously reflected pursuit of Reunification Plan. In June of 2019 again self-represented respondent filed a motion this time for Termination referencing request for reunification process. With both parties now having benefit of counsel the court did not stress the legal requirements as set forth in MCL 700.5209(a). Perhaps regrettably, such significant focus brought to the issues of reunification before clear establishment of statutory satisfaction of requirement for termination placed the cart before the horse. Potentially efforts to identify common ground to facilitate communication inadvertently resulted in impacted expectations and thought process for the parties, heightening the tensions and difficulty the court hoped to circumvent.
>
> **THEREFORE In** [sic] **this court's review, the sum total of all factors, the best interest of the minor would not be met in granting the petition for termination of guardianship.**

This appeal after remand followed.

## II.  STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's dispositional rulings. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A trial court abuses its discretion when it choses an outcome outside the range of principled outcomes. *Id.* A trial court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018). This Court reviews de novo questions of law, *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008), including whether the trial court complied with our remand order, *Kalamazoo v MDOC (After Remand)*, 229 Mich App 132, 134-135; 580 NW2d 475 (1998).

## III.  ANALYSIS

Respondent argues that the trial court failed to comply with this Court's remand order and abused its discretion in holding that termination of the guardianship was not in JM's best interests. We agree that the trial court did not adequately comply with this Court's remand order.

As stated in our previous opinion, MCL 700.5101(a) defines "best interests of a minor" in the context of guardianship proceedings as "the sum total of the following factors to be considered, evaluated, and determined" by the trial court:

(i) The love, affection, and other emotional ties existing between the parties involved and the child.

(ii) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

(iii) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence, as a family unit, of the existing or proposed custodial home.

(vi) The moral fitness of the parties involved.

(vii) The mental and physical health of the parties involved.

(viii) The child's home, school, and community record.

(ix) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(x) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(xi) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(xii) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

Respondent argues that the trial court failed to follow this Court's remand order because the trial court's findings on several of the best-interest factors remain unreviewable. We agree. As we stated in our previous opinion, "[i]n the context of child custody disputes, this Court has stated that trial courts must consider each factor and explicitly state its findings *and conclusions*." *JCM*, unpub op at 5 (emphasis added), citing *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). In this case, although the trial court made findings under each best-interest factor, it failed to state its conclusion regarding which party, if any, the factor favored. Nor did the court indicate what weight or relative weight it gave each relevant factor. See *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Further, the trial court only made findings concerning petitioners on several factors; most notably, it failed to make any findings concerning respondents' capacity and disposition to provide JM with food, clothing and medical care, or the appropriateness of respondent's proposed custodial home, or respondent's capacity

-7-

and willingness to continue JM's education and religious upbringing. Additionally, although the trial court made some findings regarding respondent's ability to accommodate JM's special needs, the trial court made no findings regarding respondent's capacity to give JM love, affection, and guidance.[1]

Although a trial court need not comment on every matter in evidence or declare whether it has accepted or rejected every proposition argued, see *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981), the record "must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings," *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). In light of the fact that the trial court did not identify which factors supported its decision, or specify whether each factor favored a particular party, or both, or neither, and did not discuss what weight it gave various factors, we conclude that the record was insufficient for this Court to make that determination. The trial court's lack of conclusions and specificity means that the parties were unable to narrow the issues on appeal; the parties (and this Court) could easily expend a great deal of time and effort arguing a point that in the end was given little or no weight by the trial court. Moreover, the lack of findings regarding respondent under several of the factors is not explained; this Court and the parties are left guessing as to whether the trial court considered any such findings irrelevant, or whether the lack of findings indicates a lack of record evidence, or even whether the trial court intentionally decided not to make such findings.

Additionally, it is unclear whether the trial court's repeated quotation of the LGAL's report (a document not in evidence) means that the trial court viewed those statements as evidence in support of its findings, or merely that the trial court sought to indicate its agreement with the LGAL's statements based on the evidence in the record. See *Kuebler v Kuebler*, 346 Mich App 633, 660; 13 NW3d 339 (2023) (noting that the recommendations of a guardian ad litem may be considered by a trial court, but such recommendations remain subject to the rule of evidence; a trial court may not consider inadmissible evidence merely because it is contained in a report that it is permitted to review). Further, the trial court's statements under factor (xii) are difficult to parse, and this Court is unsure precisely what the trial court intended to express, much less how this factor informed the trial court's ultimate decision. This lack of clarity bolsters our reluctant conclusion that a second remand is required.

---

[1]As noted, the trial court stated in its opinion that this Court had "noted that respondent had not had much experience dealing with JM's special needs and supporting her as a special needs child." This statement is inaccurate. In our opinion, we observed that "the *trial court noted* the fact that respondent had not had much experience dealing with JM's special needs and supporting her as a special needs child." *JCM*, unpub op at 5. Our mere summary of the trial court's previous findings under the best-interest factors was not a finding of fact or even an affirmance of the trial court's previous finding, and should not have been treated as such.

Accordingly, we conclude that a second remand for the trial court to provide adequate articulation of the best-interest factors is required.[2]  On remand, the trial court should make findings regarding each relevant factor and, where appropriate, either make findings regarding both petitioners and respondent or state its rationale for not making findings with regard to a party. The trial court should also state, for each factor, whether the court has concluded that the factor favors respondent, petitioners, both, or neither party, and why.  In other words, the trial court should link its conclusion regarding each factor to its factual findings under that or another factor. The trial court should also indicate the relative weight it has given a factor where appropriate— for example, if the trial court determines that a factor favors a particular party, but should be given no or very little weight in light of other factors.  And in making its findings, the trial court should not rely on evidence that was not admitted into the record.  *Kuebler*, 346 Mich App at 660.  The trial court should consider up-to-date information when doing so.  See *Pierron v Pierron*, 282 Mich App 222, 262; 765 NW2d 345 (2009).

Remanded for further proceedings consistent with this opinion.  We retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ James Robert Redford

---

[2] We decline respondent's request to remand this matter before a different judge.  The record reflects a good-faith effort on the part of the trial court to comply with this Court's remand order, and there is no evidence that, on remand, the trial court would have difficulty putting aside previously expressed views or findings.  *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004).  Additionally, reassignment at this late stage would entail significant duplication of effort on behalf of the parties and the court system, as a new trial judge would be unable to clarify the original trial judge's findings and conclusions regarding the best-interest factors and would have to make such findings and conclusions anew.  *Id.* at 603 (noting that remand to a different judge is permissible if, among other factors, "reassignment will not entail excessive waste or duplication").

# Court of Appeals, State of Michigan

# ORDER

In re JCM, Minor

Docket No. 368224

LC No. 2013-000407-GM

Christopher P. Yates
Presiding Judge

Mark T. Boonstra

James Robert Redford
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the probate court shall articulate its findings on the best-interest factors on the record, taking into account up-to-date information. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 19, 2025
Date

Chief Clerk